## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SA'RAYA HARDEN, | : | |
| ADMINISTRATOR OF THE | : | |
| ESTATE OF ADREYA HARDEN, | : | |
| *Plaintiff*, | : | NO. |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| WEST SIDE CAREER AND | : | JURY TRIAL DEMANDED |
| TECHNOLOGY CENTER, | : | |
| WYOMING VALLEY SCHOOL, | : | |
| DISTRICT, RICHARD RAVA  in his | : | |
| individual capacity, and DOE(S) 1-10, | : | |
| *Defendants*. | : | |

## COMPLAINT

AND NOW, comes the Plaintiff, SA'RAYA HARDEN, ADMINISTRATOR OF THE ESTATE OF ADREYA HARDEN, through counsel, who files this Complaint against the Defendants, WEST SIDE CAREER AND TECHNOLOGY CENTER, WYOMING VALLEY SCHOOL DISTRICT, RICHARD RAVA in his individual capacity, and DOE(S) 1-10, and on Plaintiff's own knowledge, and otherwise upon information and belief, Plaintiff avers as follows:

## INTRODUCTION

1.      This is a civil rights action brought by the Estate and heirs of Adreya Harden ("***Decedent***" or "***Adreya***"), a transgender female student at West Side Career and Technology Center ("***Tech***"), and prior to Tech, a student within the Wyoming

Valley West School District (the "***District***") (collectively the "***School Defendants***"). The School Defendants deprived Adreya of equal access to educational opportunities and, ultimately, her life, because of the School Defendants' deliberate indifference to relentless harassment by other students based on her gender identity and sexual orientation, and failure to conform to "male sex" stereotypes, and because the School Defendants blamed Adreya for the abuse she was experiencing, and in doing so, further discriminated against her.

2.      Adreya never felt safe within the School Defendants, particularly Tech. Throughout the approximately two (2) months she spent at Tech at the beginning of the 2021-2022 school year, Adreya was subjected to anti-gay and anti-trans slurs nearly every day.  These verbal attacks happened in classrooms and hallways, sometimes in the presence of school officials.

3.      Concerned employees at Tech reported Adreya's mistreatment to Tech's Principal Richard Rava ("***Rava***") – and the serious impact it was having on Adreya.  Rava and Tech, however, failed to take any action to intervene or to help her.

4.      The School Defendants' response to the abuse was both grossly inadequate and discriminatory.  Contrary to Rava's obligation as a school official entrusted with the safety and education of all students, including vulnerable students

like Adreya, Rava's response was to ignore, dismiss, mock, and sometimes blame Adreya for the abuse she was suffering.

5.  In fact, Tech actively discriminated against Adreya.  Tech took active steps to prevent Adreya from attending classes or programming that she desired. Adreya wanted to study cosmetology, however, Tech would not allow it. Additionally, despite Adreya and her family submitting name-change paperwork to Tech indicating her desire to be addressed as "Adreya", Tech teachers and employees refused to call her "Adreya" and instead continuously called her by her birth name, "Andrew" in front of other students.

6.  This incessant harassment caused Adreya to suffer serious emotional harm, which triggered depression, self-harm, and suicidal thoughts.  Ultimately, it played a role in Adreya taking her own life.

7.  Adreya died by suicide on October 5, 2021 at the age of fifteen (15).

8.  The sex and gender-based harassment at the School Districts – and its consequences – were predictable, given the inadequate district and school-wide policies and the lack of adequate training for administrators, staff, students, and families to address and prevent such harassment.

9.  For example, although Tech's policy number 249 prohibits "bullying" and "cyberbullying," there is no policy whatsoever within Tech that addresses bullying on the basis of sex, gender, sexual orientation, or gender non-conformance.

Additionally, although the District's policy number 249 prohibits harassment relating to "sex" or "sexual orientation," it did not expressly prohibit harassment or bullying based on gender non-conformance or that harassment based on "sex" or "sexual orientation" was a form of prohibited harassment based on "gender" or "gender non-conformance."

10.     The School Defendants' lack of adequate policies and training significantly harmed Adreya and placed her at an unreasonable risk of harm.  Now, Adreya is deceased.

11.     Plaintiff brings this suit to vindicate Adreya's rights under of 42 U.S.C. § 1983 and Title IX of the Educational Amendments of 1972 ("***Title IX***"), Title VI of the Civil Rights Act of 1964 ("***Title VI***"), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as their own rights. Plaintiff seeks damages for Adreya's loss of educational benefits, and her emotional and physical injuries, as well as damages for the loss of Plaintiff's daughter. Plaintiff's hope is that this lawsuit will lead to much-needed change within the School Defendants, so that all students – including vulnerable students like Adreya – feel safe in Luzerne County schools.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 which gives United States District Courts jurisdiction over civil actions arising

under the laws of the United States.  Specifically, in Counts I through X, Plaintiff asserts claims under: Title IX, 20 U.S.C. § 1681 *et seq.*; Title VI, 42 U.S.C. § 2000d; and 42 U.S.C. § 1983 for Defendants' violations of the Equal Protection Clause of the Fourteenth Amendment to the United States' Constitution.

13.    This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) & (4) because Plaintiff seeks redress and damages for deprivation of constitutional and federal civil rights under 42 U.S.C. § 1983.

14.    This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a).  Specifically, the laws of the Commonwealth of Pennsylvania apply to Counts XI and XII.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since all parties reside in this District and the events giving rise to the claims occurred in this District.

## PARTIES

### Plaintiff

16.    Sa'Raya Harden ("***Plaintiff***" or "***Harden***") is an adult resident of Luzerne County, Pennsylvania.  Harden brings this action as the biological mother of Adreya and as Administrator of the Estate of Adreya Harden (the "***Estate***"), having been granted letters of administration by the Luzerne County Register of Wills on December 16, 2022.

17.     Harden brings this action under 42 Pa.C.S. § 8301 and § 8302 on behalf of the Estate and for the benefit of Decedent's wrongful death and survival beneficiary(ies).

18.     Harden brings a wrongful death claim under 42 Pa.C.S. § 8301, on behalf of Decedent's wrongful death beneficiary(ies): Sa'Raya Harden, 131 Eley Street, Kingston, Luzerne County, Pennsylvania 18704, mother of Decedent and Administrator of Decedent's Estate.

19.     Decedent, Adreya Harden, did not bring an action for injuries during her lifetime.  No other action for wrongful death has been commenced.  Harden claims all allowable damages, including loss of services, support, companionship, comfort, and contribution for and during the expected remainder of Decedent' life.

20.     Harden also brings a survival claim under 42 Pa.C.S. § 8302.  Harden and the Estate claim all allowable damages, including pain and suffering prior to death, and loss of past and future earnings, income, and earning capacity.

## **Defendant(s)**

21.     At all relevant times, Defendant Tech is a public school, and a full-time comprehensive Career and Technology Center, where a complete academic curriculum complements fully accredited career and technology courses for grades 9 through 12, located at 75 Evans Street, Kingston, Luzerne County, Pennsylvania 18704.

22.     At all relevant times, Defendant Tech serves students from multiple school districts within Luzerne County, Pennsylvania, including the District.

23.     At all relevant times, Tech was a "public entity" within the meaning of 42 U.S.C. § 12131(1)(B).

24.     At all relevant times, Tech was a recipient of federal funds and/or assistance within the meaning of 20 U.S.C. § 1681(a).

25.     At all relevant times, Defendant the District is a K through 12 regional public school district that serves multiple boroughs and townships in Luzerne County, Pennsylvania, located at 450 North Maple Avenue, Kingston, Luzerne County, Pennsylvania 18704.

26.     At all relevant times, the District was a "public entity" within the meaning of 42 U.S.C. § 12131(1)(B).

27.     At all relevant times, the District was a recipient of federal funds and/or assistance within the meaning of 20 U.S.C. § 1681(a).

28.     Upon information and belief, Defendant Rava sued in his individual capacity, is an adult resident of Luzerne County, Pennsylvania.

29.     At all relevant times, Rava was an adult employee and/or agent of Tech and acting within the scope and course of his employment.

30.     At all relevant times, Rava was the principal of Tech.

31.    At all relevant times, Rava was a "person" within the meaning of 42 U.S.C. § 1983.

32.    At all relevant times, Defendant(s) Doe(s) 1-5 ("***Doe(s) 1-5***"), upon information and belief, were minor residents of Luzerne County, Pennsylvania

33.    Upon information and belief, Doe(s) 1-5 were students within Tech and/or the District.

34.    At all relevant times, Defendant(s) Doe(s) 6-10 ("***Doe(s) 6-10***"), upon information and belief, were adult residents of Luzerne County, Pennsylvania.

35.    Upon information and belief, Doe(s) 6-10 were adult employees and/or agents of Tech and/or the District.

36.    At all relevant times, Decedent was a student of Tech and/or the District.

## **FACTS**

### *Adreya's wrongful treatment, harassment, and bullying by Defendants on the basis of sex*

37.    This case stems from Adreya taking her own life by suicide on October 5, 2021.

38.    Adreya's family described her as, "[a] striking young lady, who had an amazing spirit, and a bright light for the people that took the time to really get to know her."  *See* Obituary for Adreya Harden, attached hereto as Exhibit A; *see also* the photograph below of Adreya shortly before her death.



39.     Adreya "thrived on building up her peers and emphasizing positivity and most importantly, to love yourself and Be Kind." *Id*.

40.     Adreya was described by a friend as, "too perfect of a person to be" and that Adreya was "not just a human, she was a gift, a gift that I never knew I needed." *See https://www.timesleader.com/news/1525043/transgender-day-of-remembrance-ceremony- held-in-wilkes-barre.*

41.     Adreya was only fifteen (15) years old at the time of her death.

42.     Adreya was born as "Andrew" – named after her father.

43.     At Adreya's request, Adreya's family and friends began calling her "Adreya".

44.     Adreya came out publicly as LGBTQIA+ in sixth (6th) grade as a student in the District.

45.    After coming out, Adreya was not comfortable in a traditional school setting.

46.    This was due, in relevant part, to the harassment and bullying on the basis of sex that she received from her classmates, including Doe(s) 1-5.

47.    Instead of addressing the bullying and harassment suffered by Adreya, the District allowed Adreya to receive her education through private after-hours instruction by a teacher at the local library during sixth (6th) and seventh (7th) grade, the 2018-2019 and 2019-2020 school years, respectively.

48.    The private program through the District was unavailable for Adreya's eighth (8th) grade school year due to COVID-19.

49.    As such, Adreya began attending school at the District over Zoom for the 2020-2021 school year.

50.    Adreya repeatedly asked her teachers, including Doe(s) 6-10, to call her "Adreya" or, at the very least, refer to her by her last name "Harden."

51.    Adreya's teachers at the District, including Doe(s) 6-10, however, refused her request.

52.    Adreya's teachers at the District, including Doe(s) 6-10, continued to call her "Andrew" in front of her classmates.

53.    Doe(s) 6-10 discriminated against and harassed Adreya on the basis of sex.

54.     This treatment caused Adreya to feel humiliated, depressed, and isolated from her peers.

55.     Adreya's classmates, including Doe(s) 1-5, felt emboldened to bully and harass Adreya due to the adverse treatment Adreya received from her teachers, including Doe(s) 6-10.

56.     Due to this adverse treatment by the District's teachers, including Doe(s) 6-10, Adreya's grades, participation in school, and mental health suffered tremendously.

57.     Adreya stopped participating in her 8th grade classes to avoid being singled out and mistreated by her teachers, Doe(s) 6-10.

58.     Eventually, Adreya's mental health declined to such an extent that she began missing class and was considered truant.

59.     The District failed to take any steps to address the bullying and harassment suffered by Adreya.

60.     Eventually, during her 8th grade year, Adreya was brought before Magisterial District Judge Hagerty on truancy charges.

61.     After MDJ Hagerty heard about the harassment and mistreatment that Adreya suffered at the heads of the District's teachers and students, including Doe(s) 1-5 and Doe(s) 6-10, he refused to find Adreya truant.

62.     Instead, MDJ Hagerty ordered that Adreya be allowed to enter the 2021-2022 school year in ninth (9th) grade.

63.     At or about this time, Adreya had already begun transitioning from male to female.

64.     At or about this time, Adreya was preparing to start hormone therapy.

65.     At or about this time, Adreya and Plaintiff filed a Petition in Luzerne County Court of Common Pleas to legally change Adreya's name from "Andrew" to "Adreya."

66.     Due to COVID-19, the hearing on Adreya's name change petition was continued several times.

67.     Adreya's hearing date was finally scheduled for November 1, 2021.

68.     Adreya passed away before she could attend her name change hearing.

69.     After Adreya's death, Plaintiff attended the scheduled hearing and Adreya's name was legally changed posthumously.

70.     Adreya enrolled in Tech for her ninth (9th) grade year for the 2021-2022 school year.

71.     Adreya loved cosmetology and was excited to enroll in Tech.

72.     After the school year started, Plaintiff and Adreya met with her counselor at Tech, Mr. Ogurkis.

73.     Immediately upon meeting with Mr. Ogurkis, Adreya and Plaintiff felt unwelcome and uncomfortable.

74.     Plaintiff brought Adreya's name change petition and legal paperwork from MDJ Hagerty to the meeting with Mr. Ogurkis.

75.     Plaintiff explained to Mr. Ogurkis that Adreya was transitioning and preferred to be referred to as Adreya, not Andrew.

76.     Adreya referred to the name "Andrew" as her "dead name."

77.     Mr. Ogurkis was unwelcoming to Adreya and told her that she might "have a hard time fitting in" at Tech.

78.     Plaintiff and Adreya also asked to enroll Adreya in the cosmetology program at Tech.

79.     Mr. Ogurkis refused to enroll Adreya in the Cosmetology program.

80.     Instead, she was enrolled in the Food Marketing and Distribution program.

81.     After Adreya's death, Plaintiff spoke with the director of Tech's Cosmetology program – they said that they were not informed that Adreya wanted to enroll in Cosmetology, but had they known, they would have allowed Adreya in the program.

82.     Plaintiff also asked Mr. Ogurkis about how supporting Tech was of the LGBTQIA+ community.

83.    Mr. Ogurkis told Plaintiff and Adreya that she would be the only transgender student but there were classes where she "could go" if she needed a safe space.

84.    Plaintiff and Adreya left the meeting with Mr. Ogurkis feeling even more uncomfortable and unsupported.

85.    Adreya started at Tech on Monday, September 27, 2021, several weeks after the school year had already started.

86.    Adreya told her mother that some of the teachers, including Doe(s) 6-10 called Adreya by her "dead name" Andrew in front of the whole class during roll call.

87.    Adreya's teachers, including Doe(s) 6-10, refused to call her "Adreya" despite requests to do so.

88.    Adreya's classmates, including Doe(s) 1-5 bullied and harassed Adreya incessantly about her sex during the short amount of time that Adreya attended Tech.

89.    For example, Doe(s) 1-5 harassed and bullied Adreya, asking her if she still had male genitalia and whether she was going to "chop that [penis] off."

90.    While Adreya was at Tech, one of the teachers, Tom Pieczynski emailed Rava approximately three (3) times, notifying Rava that Adreya was being bullied and harassed about her sex.

91.     Tech took no action in response to the bullying and harassment suffered by Adreya.

92.     Rava took no action in response to the bullying and harassment suffered by Adreya.

93.     As Adreya was leaving school one day, a car pulled up alongside her on the school driveway and blew the horn loudly enough that it scared Adreya and caused her to fall to the ground.

94.     Adreya was so traumatized and humiliated by the treatment she received at Tech by Doe(s) 1-5 and Doe(s) 6-10 that she refused to go anymore.

95.     Adreya begged Plaintiff not to send her back to Tech.

96.     The last time Plaintiff saw or spoke with Adreya was the night of Monday, October 4, 2021.

97.     The morning of October 5, 2021, Adreya was found unresponsive in her bed.

98.     Adreya passed away by suicide on October 5, 2021.

99.     Adreya passed away due to an intentional overdose of her medication.

100.    Although Adreya did not leave a suicide note, prior to her death, Adreya had changed her Instagram status to deceased.

*Background on Tech's anti-harassment policies*

101.   During the 2021-2022 academic year, while Adreya attended Tech, Tech's policy manual included policies prohibiting harassment, bullying, and hazing by employees and students.

102.   Upon information and belief, Tech did not have a suicide prevention policy in place.

103.   The policy titled "Bullying/Cyberbullying" defines "bullying", in relevant part, as "intentional electronic, written, verbal or physical act or series of acts directed at another student or students, which occurs in a school setting that is severe, persistent or pervasive and has the effect of doing any of the following: 1. Substantially interfering with a student's education [and/or] 2. Creating a threatening environment." *See West Side Career and Technology Center,* Policy Manual § 249, "Bullying/Cyberbullying," as adopted March 25, 2019 and last revised August 23, 2021 ("*Tech Policy 249*"), attached hereto as Exhibit B.

104.   According to Tech Policy 249, "verbal and written complaints of bullying shall be investigated promptly, and appropriate corrective or preventative action shall be taken when allegations are substantiated." *Id.*

105.   Additionally, as it relates to Title IX, Tech Policy 249 notes that, "Every report of alleged bullying that can be interpreted at the outset to fall within the provisions of policies addressing potential violations of laws against discrimination

and discriminatory harassment shall be handled as a joint, concurrent investigation into all allegations and coordinated with the full participation of the Compliance Officer and Title IX coordinator. If, in the course of a bullying investigation, potential issues of discrimination are identified, the Title IX Coordinator shall be promptly notified, and the investigation shall be conducted jointly and concurrently to address the issues of alleged discrimination as well as the incidents of alleged bullying." *Id.*

106.   Specifically, as it relates to Discrimination and Title IX, the policy titled "Discrimination/ Title IX Sexual Harassment Affecting Students" states that "discrimination" means "to treat individuals differently, or to harass or victimize based on a protected classification including race, color, age, creed, religion, sex, sexual orientation, ancestry, national origin, marital status, pregnancy, or handicap/disability." *See West Side Career and Technology Center,* Policy Manual § 103, "Discrimination/ Title IX Sexual Harassment Affecting Students," as adopted March 25, 2019 and last revised December 15, 2022 ("***Tech Policy 103***"), attached hereto as Exhibit C.

107.  Tech Policy 103 further notes that "Harassment" is "a form of discrimination based on the protected classifications listed in this policy consisting of unwelcome conduct such as graphic, written, electronic, verbal or nonverbal acts, including offensive jokes, slurs, epithets and name-calling, ridicule or mockery,

insults or put-downs, offensive objects or pictures, physical assaults or threats, intimidation, or other conduct that may be harmful or humiliating or interfere with a person's school or school-related performance when such conduct is: 1. Sufficiently severe, persistent or pervasive; and 2. A reasonable person in the complainant's position would find that it creates an intimidating, threatening, or abusive educational environment such that it deprives or adversely interferes with or limits an individual or group of the ability to participate in or benefit from the services, activities, or opportunities offered by [Tech]. *Id*.

108.   Further, "Title IX sexual harassment" as defined in Tech Policy 103 means "conduct on the basis of sex that satisfies one or more of the following" and in relevant part, "unwelcome conduct determined by a reasonable person to be so severe, pervasive and objectively offensive that it effectively denies a person equal access to a [Tech] education program or activity." *Id*.

109.   Tech Policy 103 directs any employee who "suspects or is notified that a student has been subject to conduct that constitutes a violation of this policy shall immediately report the incident to the building administrator… the building administrator shall promptly notify the Title IX Coordinator of all reports of discrimination, Title IX sexual harassment or retaliation." *Id*.

110.   Doe(s) 1-5 engaged in "Discrimination," "Harassment," "Title IX Sexual Harassment," "Bullying," and "Cyberbullying" in violation of the Tech's policies.

111.   Doe(s) 6-10 engaged in "Discrimination," "Harassment," "Title IX Sexual Harassment," "Bullying," and "Cyberbullying" in violation of the Tech's policies

112.   Tech failed to follow its own policies as it relates to the incessant harassment and bullying of Adreya.

### Background on the District's anti-harassment policies

113.   During the 2018-2021 school years, while Adreya attended the District, the District's policy manual included policies prohibiting harassment, bullying, and hazing by employees and students.

114.   Upon information and belief, the District did not have a suicide prevention policy in place.

115.   Upon information and belief, the District did not have a Title IX policy in place.

116.   The policy titled "Unlawful Harassment" defines "harassment" as "verbal, written, graphic or physical conduct relating to an individual's race, color, national origin/ethnicity, sex, age, disability, sexual orientation or religion when such conduct;[] 1. Is sufficiently severe, persistent or pervasive that it affects an

individual's ability to participate in or benefit from an educational program or activity or creates an intimidating, threatening or abusive educational environment[;] 2. Has the purpose of effect of substantially or unreasonably interfering with an individual's academic performance[;] 3. Otherwise adversely affects an individual's learning opportunities. *See Wyoming Valley West School District*, Policy Manual § 248, "Unlawful Harassment," as adopted April 12, 1989 and last revised December 3, 2018 ("***District Policy 248***"), attached hereto as Exhibit D.

117.   The policy titled "Bullying/Cyberbullying" defines "bullying" as a form [of] harassment in which behavior is intended, or perceived to intend, to harm or cause distress to another.  The action occurs repeatedly over time and, in addition to causing harm or distress, has the effect of insulting or demeaning a student or group of students in such a way as to cause disruption of the orderly operation of the school… [i]t may include, but is not limited to, actions such as verbal taunts, physical aggression… exclusion from peer groups within the school, name-calling, and derogatory statements, including any discriminatory statement." *See* Exhibit B.

118.   "Cyberbullying" is defined as "the following misuses of technology: harassing, teasing, intimidating, threatening, or terrorizing another student or staff member by way of any technological tool, such as sending or posing inappropriate or derogatory email messages, instant messages, text messages, digital pictures or images, or web site postings (including blogs), which has the effect of: (1)

Physically, emotionally or mentally harming a student[;] (2) Placing a student in reasonable fear of physical, emotional or mental harm[;] (3) Placing a student in reasonable fear of damage to or loss of personal property[;] (4) Creating an intimidating or hostile environment that substantially interferes with a student's educational opportunities." *Id*.

119.   According to District Policy 248 and District Policy 249, there are specific requirements that District employees are required to take when a student is a victim of bullying/cyberbullying, including but not limited to reporting violations to the District's principal or principal's designee, and the allegation must be investigated. *Id*.

120.   Doe(s) 1-5 engaged in "Harassment," "Bullying," and "Cyberbullying" in violation of the District's policies.

121.   Doe(s)  6-10  engaged  in  "Harassment,"  "Bullying,"  and "Cyberbullying" in violation of the District's policies.

122.   The District failed to follow its own policies as it relates to the incessant harassment and bullying of Adreya.


**COUNT I**
**Deliberate indifference to the student-on-student sex-based harassment**
**in violation of Title IX of the Education Amendments of 1972,**
**20 U.S.C. § 1681, *et seq*.**
**(against Tech)**

123.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

124.   Adreya experienced severe, pervasive, and objectively offensive sex-based harassment by her classmates, and specifically, Doe(s) 1-5.

125.   Tech had substantial control over the students who harassed Adreya and the context in which they harassed her.

126.   Tech had actual notice that Adreya experienced sex-based harassment by her classmates.

127.   For example, tech had actual notice that Adreya experienced sex-based harassment by her classmates based on the reports of Mr. Piecznski – a Tech teacher – directly to Rava.

128.   Rava was an "appropriate person" within the meaning of Title IX, as he had the authority to address sex-based harassment that Adreya was experiencing and to take corrective action on Tech's behalf.

129.   Tech acted with deliberate indifference to Adreya and Piecznski's reports about the sex-based harassment that Adreya was experiencing by, among other things:

      a.    Failing to take any action to investigate the reports and remediate the harassment;

      b.    Failing to offer or provide educational accommodations, such as academic and psychological counseling, to Adreya after learning about the harassment and its impact on her;

    c.    Failing to inform Adreya and her mother about Adreya's rights under Title IX or the identity of Tech's Title IX coordinator, if there was such a person in the 2021-2022 school year;

    d.    Blaming and further victimizing Adreya for the harassment she was experiencing; and

    e.    Ignoring, dismissing, and/or mocking Adreya and the reports of the serious impact the harassment was having on Adreya's mental health.

130.   The unchecked sex-based harassment created a hostile educational environment for Adreya, depriving her of the educational opportunities and benefits provided by Tech.

131.   For example, Adreya was prohibited from attending the programming of her choice; her grades and academic performance suffered; and she suffered serious emotional and psychological harm, including depression, self-cutting, and suicidal thoughts.

132.   If Tech had taken appropriate steps to address the harassment and protect Adreya, her educational losses, and her tragic death could have been avoided.

133.   As a direct and proximate result of Tech's deliberate indifference, Adreya suffered injuries, damages, and losses as set forth herein.

134.   Because of Adreya's death, these injuries, damages, and losses are recoverable by her Estate, through its personal representative, Plaintiff.

## <u>COUNT II</u>
**Deliberate indifference to the student-on-student sex-based harassment**

**in violation of Title IX of the Education Amendments of 1972,**
**20 U.S.C. § 1681,** *et seq.*
**(against the District)**

135.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

136.   Adreya experienced severe, pervasive, and objectively offensive sex-based harassment by her classmates, and specifically, Doe(s) 1-5.

137.   The District had substantial control over the students who harassed Adreya and the context in which they harassed her.

138.   The District had actual notice that Adreya experienced sex-based harassment by her classmates.

139.   For example, Plaintiff notified the District Adreya experienced sex-based harassment by her classmates.

140.   Plaintiff notified District teachers and/or administrators, "appropriate person[s]" within the meaning of Title IX.

141.   The District acted with deliberate indifference to Plaintiff's reports about the sex-based harassment that Adreya was experiencing by, among other things:

       a.    Failing to take any action to investigate the reports and remediate the harassment;

       b.    Failing to offer or provide educational accommodations, such as academic and psychological counseling, to Adreya after learning about the harassment and its impact on her;

    c.     Failing to inform Adreya and her mother about Adreya's rights under Title IX or the identity of Tech's Title IX coordinator, if there was such a person in the 2021-2022 school year;

    d.     Blaming and further victimizing Adreya for the harassment she was experiencing; and

    e.     Ignoring, dismissing, and/or mocking Adreya and the reports of the serious impact the harassment was having on Adreya's mental health.

142.   The unchecked sex-based harassment created a hostile educational environment for Adreya, depriving her of the educational opportunities and benefits provided by the District.

143.   For example, Adreya was prohibited from attending the programming of her choice; her grades and academic performance suffered; and she suffered serious emotional and psychological harm, including depression, self-cutting, and suicidal thoughts.

144.   If the District had taken appropriate steps to address the harassment and protect Adreya, her educational losses, and her tragic death could have been avoided.

145.   As a direct and proximate result of Tech's deliberate indifference, Adreya suffered injuries, damages, and losses as set forth herein.

146.   Because of Adreya's death, these injuries, damages, and losses are recoverable by her Estate, through its personal representative, Plaintiff.

## **COUNT III**
**Intentional sex-based discrimination by school administrator**

**in violation of Title IX of the Education Amendments of 1972,**
**20 U.S.C. § 1681, *et seq.***
**(against Tech)**

147.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

148.   While Adreya was a student at Tech, Tech, through Rava, knew that Adreya was a transgender female.

149.   Specifically, Plaintiff presented Tech and Rava with Adreya's court paperwork petitioning for a name change from "Andrew" to "Adreya" in support of Adreya's gender transition.

150.   While Adreya was a student at Tech, Tech, through Rava, also knew that Adreya was experiencing serious mental health issues, including depression, suicidal ideation, and self-harming behavior.

151.   Specifically, Mr. Piecznski, a teacher, informed Rava that classmates were harassing Adreya about her genitals and that it was affecting Adreya's mental health.

152.   As the Principal and therefore, an administrator of Tech, Rava had the authority to take action on Tech's behalf to address Adreya's mental health issues, including the imminent danger for self-harm.

153.   Tech, through Rava, intentionally failed to take action to help Adreya, motivated at least in part by Adreya's sexual orientation and/or gender identity and/or failure to conform with male sex-stereotypes.

154.   As such, Tech intentionally discriminated against Adreya on the basis of sex, in violation of Title IX.

155.   Tech's intentional sex-based discrimination against Adreya is evidenced by, among other things:

   a.   Rava ignoring and dismissing Adreya's request to study cosmetology, instead forcing Adreya to study other more "masculine" subjects;

   b.   Rava ignoring and dismissing Adreya's and her mother's request that Adreya be called "Adreya" and not "Andrew" despite being provided with documentation of Adreya's petition for name change;

   c.   Rava, and Rava allowing Tech teachers, to continue the harassment of Adreya by openly calling her "Andrew" in front of other students, thus encouraging the students to bully Adreya;

   d.   Rava ignoring and dismissing other teachers' reported concerns about Adreya's bullying and harassment; and

   e.   Rava failing to offer Adreya any assistance, such as psychological counseling services, seek any emergency mental health services for her, or informing Adreya's mother of her mental health crisis.

156.   In short, Tech, through Rava, blamed Adreya for the anti-transgender abuse she suffered, treating it as part of the price she had to pay for being gender non-conforming, transgender, and failing to conform to male sex-stereotypes.

157.  Had Tech taken appropriate steps to address Adreya's serious mental health issues, her educational losses and tragic death could have been avoided.

158.  As a direct and proximate result of Tech's intentional sex-based discrimination, Adreya suffered injuries, damages, and losses as set forth herein.

159.  Because of Adreya's death, these injuries, damages, and losses are recoverable by her Estate, through its personal representative, Plaintiff.

## **COUNT IV**
**Intentional sex-based discrimination by school administrator in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*
(against the District)**

160.  Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

161.  While Adreya was a student at the District, the District, through Doe(s) 6-10, knew that Adreya was a transgender female.

162.  Specifically, Sa'Raya notified the District of Adreya's transition and impending legal name change.

163.  While Adreya was a student at the District, the District, through Doe(s) 6-10, also knew that Adreya was experiencing serious mental health issues, including depression, suicidal ideation, and self-harming behavior.

164.  As agents/administrators of the District, Doe(s) 6-10 had the authority to take action on the District's behalf to address Adreya's mental health issues, including the imminent danger for self-harm.

165. The District, through Doe(s) 6-10 intentionally failed to take action to help Adreya, motivated at least in part by Adreya's sexual orientation and/or gender identity and/or failure to conform with male sex-stereotypes.

166. As such, the District intentionally discriminated against Adreya on the basis of sex, in violation of Title IX.

167. The District's intentional sex-based discrimination against Adreya is evidenced by, among other things:

a. Doe(s) 6-10 ignoring and dismissing Adreya's request to study to cosmetology, instead forcing Adreya to study other more "masculine" subjects;

b. Doe(s) 6-10 ignoring and dismissing Adreya's and her mother's request that Adreya be called "Adreya" and not "Andrew" despite being provided with documentation of Adreya's petition for name change;

c. Doe(s) 6-10 allowing the District's teachers, to continue the harassment of Adreya by openly calling her "Andrew" in front of other students, thus encouraging the students to bully Adreya;

d. Doe(s) 6-10 ignoring and dismissing other teachers' reported concerns about Adreya's bullying and harassment; and

e. Doe(s) 6-10 failing to offer Adreya any assistance, such as psychological counseling services, seek any emergency mental health services for her, or informing Adreya's mother of her mental health crisis.

168. In short, the District, through Doe(s) 6-10, blamed Adreya for the anti-transgender abuse she suffered, treating it as part of the price she had to pay for being gender non-conforming, transgender, and failing to conform to male sex-stereotypes.

169.  Had the District taken appropriate steps to address Adreya's serious mental health issues, her educational losses and tragic death could have been avoided.

170.  As a direct and proximate result of the District's intentional sex-based discrimination, Adreya suffered injuries, damages, and losses as set forth herein.

171.  Because of Adreya's death, these injuries, damages, and losses are recoverable by her Estate, through its personal representative, Plaintiff.

## COUNT V
**Failure to train, in violation of Plaintiff's Constitutional and
Federal rights, pursuant to 42 U.S.C § 1983
(against Tech & Rava)**

172.  Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

173.  Tech is subject to 42 U.S.C. § 1983.

174.  Student-on-student harassment based on sexual orientation and/or failure to conform to sex stereotypes that a school refuses to address is a form of unlawful sex discrimination that violates a student's rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

175.  Adreya also had federal rights secured by Title IX, which provides that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

176.   Title IX was intended to benefit students like Adreya.

177.   Title IX provides students like Adreya clear federal rights to be free from known sex discrimination at school.

178.   In *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009), the U.S. Supreme Court concluded "that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and held a plaintiff may bring causes of action under both Title IX and § 1983 for unlawful sex discrimination.

179.   At all relevant times, Tech had unconstitutional customs, policies, or practices of failing to properly or sufficiently train administrators, teachers, staff, students, and families concerning sex discrimination and sex-based harassment against students, including LGBTQIA+ harassment; Title IX and/or student-on-student sex-based harassment, including LGBTQIA+ harassment; and identifying, investigating, reporting, preventing, stopping, and remedying the effects of discrimination and harassment against LGBTQIA+ students.

180.   At all relevant times, Tech had unconstitutional customs, policies, or practices of failing to properly or sufficiently train administrators, teachers, staff, students, and families concerning its policies on sex discrimination and sex-based

harassment against students, including LGBTQIA+ harassment; Title IX and/or student-on-student sex-based harassment, including LGBTQIA+ harassment; and identifying, investigating, reporting, preventing, stopping, and remedying the effects of discrimination and harassment against LGBTQIA+ students.

181.    Tech failed to provide such training to its administrators, teachers, staff, students, and families, despite the patently obvious need for training on, among other things, sex-based harassment of students, including LGBTQIA+ harassment, and identifying, investigating, reporting, stopping, and remedying the effects of discrimination and harassment against LGBTQIA+ students.

182.    Numerous authorities, including federal courts, made it clear and had given notice to Tech and other public schools that school employees will confront LGBTQIA+ harassment and discrimination with regularity, given the high predictability, recurrence, prevalence, and injurious nature of such harassment and discrimination in schools.  Thus, it was foreseeable and inevitable that the District's administrators and employees would encounter recurring situations involving LGBTQIA+ harassment and discrimination implicating students' Constitutional and federal rights, and they did, in fact, encounter those recurring situations.

183.    Tech failed to adequately train its administrators, teachers, staff, students, and families, and thereby failed to prohibit or discourage foreseeable LGBTQIA+ harassment and discrimination, despite the clearly established and well-

known dangers of such harassment and discrimination faced by students in U.S. public schools.

184. Tech failed to provide such training despite the foreseeable consequences that could result from a lack of instruction, including, but not limited to, LGBTQIA+ harassment and discrimination, as Adreya experienced, and adverse effects from such harassment and discrimination, which Adreya also experienced.

185. Tech's failure to train its administrators, teachers, staff, students, and families amounted to deliberate indifference to the rights of students, with whom Tech employees had routine and regular contact.

186. Tech's failure to train its administrators, teachers, staff, students, and families caused Adreya to suffer ongoing sex-based harassment in violation of her Constitutional and federal rights.

187. Tech's customs, policies, and practices for responding to reports of student-on-student LGBTQIA+ harassment, including reports about the LGBTQIA+ harassment that Adreya and other students were experiencing at Tech, were so clearly inadequate that they give rise to a reasonable inference that Tech acquiesced in and ratified the harassment.

188. These customs, policies, and practices for responding to reports of student-on-student LGBTQIA+ harassment included, but were not limited to, blaming the victim for being harassed; treating victims' sexual orientation and

gender identity as a choice of lifestyle for which they must accept all consequences, including harassment and bullying; refusing to take action to address LGBTQIA+ harassment; and participating in sex-based discrimination against the victims.

189.   As a direct and proximate result of Tech's deliberate indifference to and violation of Adreya's established Constitutional and federal rights, Adreya suffered injuries, damages, and losses as set forth herein.

190.   Because of Adreya's death, these injuries, damages, and losses are recoverable by her Estate, through its personal representative, Plaintiff.

191.   As a direct and proximate result of Tech's deliberate indifference to and violation of Adreya's established Constitutional and federal rights, Adreya's heir, Harden, has suffered injuries, damages, and losses as set forth herein.

192.   As personal representative of the Estate, Harden seeks damages for these injuries and losses on behalf of Adreya's heir, Harden.

193.   As Adreya's heir, Harden also seeks damages for the injuries and losses she has suffered.

## COUNT VI
### Failure to train, in violation of Plaintiff's Constitutional and Federal rights, pursuant to 42 U.S.C § 1983
### (against the District & Doe(s) 6-10)

194.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

195.     District is subject to 42 U.S.C. § 1983.

196.   Student-on-student harassment based on sexual orientation and/or failure to conform to sex stereotypes that a school refuses to address is a form of unlawful sex discrimination that violates a student's rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

197.   Adreya also had federal rights secured by Title IX, which provides that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

198.   Title IX was intended to benefit students like Adreya.

199.   Title IX provides students like Adreya clear federal rights to be free from known sex discrimination at school.

200.   In *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009), the U.S. Supreme Court concluded "that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and held a plaintiff may bring causes of action under both Title IX and § 1983 for unlawful sex discrimination.

201.   At all relevant times, District had unconstitutional customs, policies, or practices of failing to properly or sufficiently train administrators, teachers, staff, students, and families concerning sex discrimination and sex-based harassment

against students, including LGBTQIA+ harassment; Title IX and/or student-on-student sex-based harassment, including LGBTQIA+ harassment; and identifying, investigating, reporting, preventing, stopping, and remedying the effects of discrimination and harassment against LGBTQIA+ students.

202.   At all relevant times, District had unconstitutional customs, policies, or practices of failing to properly or sufficiently train administrators, teachers, staff, students, and families concerning its policies on sex discrimination and sex-based harassment against students, including LGBTQIA+ harassment; Title IX and/or student-on-student sex-based harassment, including LGBTQIA+ harassment; and identifying, investigating, reporting, preventing, stopping, and remedying the effects of discrimination and harassment against LGBTQIA+ students.

203.   District failed to provide such training to its administrators, teachers, staff, students, and families, despite the patently obvious need for training on, among other things, sex-based harassment of students, including LGBTQIA+ harassment, and identifying, investigating, reporting, stopping, and remedying the effects of discrimination and harassment against LGBTQIA+ students.

204.   Numerous authorities, including federal courts, made it clear and had given notice to District and other public schools that school employees will confront LGBTQIA+ harassment and discrimination with regularity, given the high predictability, recurrence, prevalence, and injurious nature of such harassment and

discrimination in schools.  Thus, it was foreseeable and inevitable that the District's administrators and employees would encounter recurring situations involving LGBTQIA+ harassment and discrimination implicating students' Constitutional and federal rights, and they did, in fact, encounter those recurring situations.

205.   District failed to adequately train its administrators, teachers, staff, students, and families, and thereby failed to prohibit or discourage foreseeable LGBTQIA+ harassment and discrimination, despite the clearly established and well-known dangers of such harassment and discrimination faced by students in U.S. public schools.

206.   District failed to provide such training despite the foreseeable consequences that could result from a lack of instruction, including, but not limited to, LGBTQIA+ harassment and discrimination, as Adreya experienced, and adverse effects from such harassment and discrimination, which Adreya also experienced.

207.   District's failure to train its administrators, teachers, staff, students, and families amounted to deliberate indifference to the rights of students, with whom Tech employees had routine and regular contact.

208.   District's failure to train its administrators, teachers, staff, students, and families caused Adreya to suffer ongoing sex-based harassment in violation of her Constitutional and federal rights.

209.   District's customs, policies, and practices for responding to reports of student-on-student LGBTQIA+ harassment, including reports about the LGBTQIA+ harassment that Adreya and other students were experiencing at Tech, were so clearly inadequate that they give rise to a reasonable inference that Tech acquiesced in and ratified the harassment.

210.   These customs, policies, and practices for responding to reports of student-on-student LGBTQIA+ harassment included, but were not limited to, blaming the victim for being harassed; treating victims' sexual orientation and gender identity as a choice of lifestyle for which they must accept all consequences, including harassment and bullying; refusing to take action to address LGBTQIA+ harassment; and participating in sex-based discrimination against the victims.

211.   As a direct and proximate result of District's deliberate indifference to and violation of Adreya's established Constitutional and federal rights, Adreya suffered injuries, damages, and losses as set forth herein.

212.   Because of Adreya's death, these injuries, damages, and losses are recoverable by her Estate, through its personal representative, Plaintiff.

213.   As a direct and proximate result of District's deliberate indifference to and violation of Adreya's established Constitutional and federal rights, Adreya's heir, Harden, has suffered injuries, damages, and losses as set forth herein.

214.   As personal representative of the Estate, Harden seeks damages for these injuries and losses on behalf of Adreya's heir, Harden.

215.   As Adreya's heir, Harden also seeks damages for the injuries and losses she has suffered.

## COUNT VII
**Sex-based discrimination in violation of the Equal Protection
Clause of the Fourteenth Amendment to the U.S. Constitution,
Pursuant to 42 U.S.C. § 1983
(against Tech)**

216.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

217.   Because Adreya was a transgender female and did not conform to male sex-stereotypes, Tech failed to enforce its anti-harassment and anti-bullying policies in response to Adreya's and other teachers' reports about the anti-transgender harassment she was experiencing at school, treating Adreya differently from similarly situated students in violation of the Equal Protection Clause of the Fourteenth Amendment.

218.   By blaming Adreya for the harassment she was suffering, treating her sexual orientation and gender identity as a choice for which she must accept any consequences (including harassment and bullying) and refusing to take an action to address the reported sex-based harassment in accordance with Tech policies, Tech

discriminated against Adreya on the basis of sex, which is subject to heightened scrutiny under the Equal Protection Clause.

219.   Tech had unconstitutional customs, policies, or practices for responding to LGBTQIA+ students' reports of sex-based harassment, including reports about the sex-based harassment Adreya and other LGBTQIA+ students were experiencing within Tech.

220.   These customs, policies, and practices for responding to LGBTQIA+ students' reports of sex-based harassment included, but were not limited to, blaming LGBTQIA+ victims for being harassed; treating victims' sexual orientation, gender identity, and/or gender expression as a choice for which they must accept any consequences (including harassment and bullying); refusing to take action to address the reported sex-based harassment in accordance with Tech policies; and participating in sex-based discrimination against LGBTQIA+ harassment victims.

221.   It is reasonable to infer from these customs, policies, and practices that Tech acted with deliberate indifference to and/or intentionally discriminated against Adreya on the basis of sex, in violation of the Equal Protection clause.

222.   As a direct and proximate result of Tech's deliberate indifference to and/or intentional discrimination against Adreya, Adreya suffered injuries, damages, and losses as set forth herein.

223.   Because of Adreya's death, these injuries, damages, and losses are recoverable by Adreya's Estate, through its personal representative, Plaintiff.

224.   As a direct and proximate result of Tech's deliberate indifference to and/or intentional discrimination against Adreya, Adreya's heir, Plaintiff has suffered injuries, damages, and losses as set forth herein.

225.   As personal representative of the Estate, Plaintiff seeks damages for these injuries and losses on behalf of Adreya's heir, Plaintiff.

226.   As Adreya's heir, Plaintiff also seeks damages for the injuries and losses he has suffered.

## <u>COUNT VIII</u>
**Sex-based discrimination in violation of the Equal Protection
Clause of the Fourteenth Amendment to the U.S. Constitution,
Pursuant to 42 U.S.C. § 1983
(against the District)**

227.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

228.   Because Adreya was a transgender female and did not conform to male sex-stereotypes, District failed to enforce its anti-harassment and anti-bullying policies in response to Adreya's and other teachers' reports about the anti-transgender harassment she was experiencing at school, treating Adreya differently from similarly situated students in violation of the Equal Protection Clause of the Fourteenth Amendment.

229.   By blaming Adreya for the harassment she was suffering, treating her sexual orientation and gender identity as a choice for which she must accept any consequences (including harassment and bullying) and refusing to take an action to address the reported sex-based harassment in accordance with District policies, District discriminated against Adreya on the basis of sex, which is subject to heightened scrutiny under the Equal Protection Clause.

230.  District had unconstitutional customs, policies, or practices for responding to LGBTQIA+ students' reports of sex-based harassment, including reports about the sex-based harassment Adreya and other LGBTQIA+ students were experiencing within District.

231.   These customs, policies, and practices for responding to LGBTQIA+ students' reports of sex-based harassment included, but were not limited to, blaming LGBTQIA+ victims for being harassed; treating victims' sexual orientation, gender identity, and/or gender expression as a choice for which they must accept any consequences (including harassment and bullying); refusing to take action to address the reported sex-based harassment in accordance with District policies; and participating in sex-based discrimination against LGBTQIA+ harassment victims.

232.   It is reasonable to infer from these customs, policies, and practices that Tech acted with deliberate indifference to and/or intentionally discriminated against Adreya on the basis of sex, in violation of the Equal Protection clause.

233.   As a direct and proximate result of District's deliberate indifference to and/or intentional discrimination against Adreya, Adreya suffered injuries, damages, and losses as set forth herein.

234.   Because of Adreya's death, these injuries, damages, and losses are recoverable by Adreya's Estate, through its personal representative, Plaintiff.

235.   As a direct and proximate result of District's deliberate indifference to and/or intentional discrimination against Adreya, Adreya's heir, Plaintiff has suffered injuries, damages, and losses as set forth herein.

236.   As personal representative of the Estate, Plaintiff seeks damages for these injuries and losses on behalf of Adreya's heir, Plaintiff.

237.   As Adreya's heir, Plaintiff also seeks damages for the injuries and losses she has suffered.

**COUNT IX**
**Discrimination on the basis of sex in violation of the**
**Equal Protection Clause of the Fourteenth Amendment to the**
**U.S. Constitution, pursuant to 42 U.S.C. § 1983**
**(against Rava)**

238.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

239.   At all relevant times, Rava was a person acting under color of state law within the meaning of 42 U.S.C. § 1983.

240.    It is clearly established that a school official's refusal to address student
-on-student harassment based on sexual orientation and/or failure to conform to sex
stereotypes is a form of unlawful sex discrimination that violates a student's rights
under the Equal Protection clause of the Fourteenth Amendment to the U.S.
Constitution.

241.    It is also clearly established that the Equal Protection Clause of the
Fourteenth Amendment to the U.S. Constitution prohibits a school official from
personally participating in intentional discrimination against a student based on race
and sex, including discrimination based on sexual orientation, gender identity,
and/or failure to conform to sex stereotypes.

242.    As the lead administrator for Tech as its Principal, Rava deprived
Adreya of these clearly established equal protection rights in two ways: (i) by acting
with deliberate indifference to reports that Adreya was experiencing sex-based
harassment by her classmates, thereby acquiescing in and ratifying the unlawful
student-on-student harassment; and (ii) personally participating in intentional
discrimination against Adreya, motivated at least, in part, by sex.

243.    Had Rava taken appropriate steps to address the reported sex-based
harassment against Adreya, and had he not ignored and belittled Adreya's serious
mental health issues because of her sexual orientation and/or gender identity,
Adreya's educational losses and tragic death could have been avoided.

244.   As a direct and proximate result of Rava's deliberate indifference to and intentional violation of Adreya's established Constitutional rights, Adreya suffered injuries, damages, and losses as set forth herein.

245.   Because of Adreya's death, these injuries, damages, and losses are recoverable by her Estate, through its personal representative, Plaintiff.

246.   As a direct and proximate result of Rava's deliberate indifference to and intentional violation of Adreya's established constitutional rights, Adreya's heir, Plaintiff, has suffered injuries, damages, and losses as set forth herein.

247.   As personal representative of the Estate, Plaintiff seeks damages for these injuries and losses on behalf of Adreya's heir, Plaintiff.

248.   As Adreya's heir, Plaintiff also seeks damages for the injuries and losses she has suffered.

## COUNT X
**Discrimination on the basis of sex in violation of the
Equal Protection Clause of the Fourteenth Amendment to the
U.S. Constitution, pursuant to 42 U.S.C. § 1983
(against Doe(s) 6-10)**

249.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

250.   At all relevant times, Doe(s) 6-10 were persons acting under color of state law within the meaning of 42 U.S.C. § 1983.

251.   It is clearly established that a school official's refusal to address student-on-student harassment based on sexual orientation and/or failure to conform to sex stereotypes is a form of unlawful sex discrimination that violates a student's rights under the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution.

252.   It is also clearly established that the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits a school official from personally participating in intentional discrimination against a student based on race and sex, including discrimination based on sexual orientation, gender identity, and/or failure to conform to sex stereotypes.

253.   As agents of Tech and/or District, Doe(s) 6-10 deprived Adreya of these clearly established equal protection rights in two ways: (i) by acting with deliberate indifference to reports that Adreya was experiencing sex-based harassment by her classmates, thereby acquiescing in and ratifying the unlawful student-on-student harassment; and (ii) personally participating in intentional discrimination against Adreya, motivated at least, in part, by sex.

254.   Had Doe(s) 6-10 taken appropriate steps to address the reported sex-based harassment against Adreya, and had they not ignored and belittled Adreya's serious mental health issues because of her sexual orientation and/or gender identity, Adreya's educational losses and tragic death could have been avoided.

255.   As a direct and proximate result of Doe(s) 6-10 deliberate indifference to and intentional violation of Adreya's established Constitutional rights, Adreya suffered injuries, damages, and losses as set forth herein.

256.   Because of Adreya's death, these injuries, damages, and losses are recoverable by her Estate, through its personal representative, Plaintiff.

257.   As a direct and proximate result of Doe(s) 6-10's deliberate indifference to and intentional violation of Adreya's established constitutional rights, Adreya's heir, Plaintiff, has suffered injuries, damages, and losses as set forth herein.

258.   As personal representative of the Estate, Plaintiff seeks damages for these injuries and losses on behalf of Adreya's heir, Plaintiff.

259.   As Adreya's heir, Plaintiff also seeks damages for the injuries and losses she has suffered.

## COUNT XI
### Gross negligence and/or recklessness
### (against Doe(s) 1-5)

260.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

261.   Doe(s) 1-5 bullied and abused Adreya, including due to her sexual orientation, gender identity, declining mental health, and suicidal ideation, as enumerated herein.

262.   Doe(s) 1-5 intended to commit the acts in question in reckless disregard for the reality that it would cause a risk of harm to Adreya.

263.   Doe(s) 1-5 did not necessarily intend to cause the harm to Adreya that resulted from their actions, namely, the death of Adreya, but were recklessly indifferent to the risk of that harm.

264.   Doe(s) 1-5, however, should have known or realized that there was a strong probability that harm to Adreya might result, even if they expected that their conduct would prove harmless.

265.   Doe(s) 1-5 acted outrageously with reckless indifference to the rights of Adreya.

266.   Due to the reckless actions of Doe(s) 1-5, Adreya took her own life by suicide.

## COUNT XII
### Intentional infliction of emotional distress
### (against Doe(s) 1-5)

267.   Plaintiff incorporates all preceding paragraphs by reference as though fully stated herein.

268.   Doe(s) 1-5's conduct as enumerated at length herein was extreme or outrageous, and utterly intolerable in a civilized community.

269.   Doe(s) 1-5's conduct as enumerated at length herein was reckless.

270.   As a direct result of Doe(s) 1-5's conduct, Adreya suffered severe emotional distress as enumerated at length herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, awarding the following relief:

a.   Compensatory damages against Defendants Tech and the District for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. (Counts I through IV), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Counts I through IV), in an amount to be determined at trial, for the injuries suffered by Adreya Harden and recoverable by the Estate of Adreya Harden, through its personal representative, Plaintiff Sa'Raya Harden, including, without limitation; damages for pre-death physical and emotional pain and suffering; lost future earnings and earning capacity; and physical loss of chance of survival;

b.   Compensatory damages against Defendants Tech and the District for violations of federal rights and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983 (Counts VII and VIII), in an amount to be determined at trial, for the injuries suffered by Adreya Harden and recoverable by the Estate of Adreya Harden, through its personal representative, Plaintiff Sa'Raya Harden, and for the injuries suffered by Adreya Harden's heir, Plaintiff Sa'Raya Harden, including, without limitation: damages for pre-death physical and emotional pain and suffering; lost future earnings and earning capacity; and physical loss of chance of survival; loss of service, support, society, companionship, love, and affection of Adreya Harden; and any medical, funeral, and/or burial expenses incurred due to Adreya Harden's wrongful death;

c.   Compensatory damages against Defendants Rava and Doe(s) 6-10 for their violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983 (Counts IX and X), in an amount to be determined at trial, for the injuries suffered by Adreya Harden and recoverable by the Estate of

Adreya Harden, through its personal representative, Plaintiff Sa'Raya Harden, and for the injuries suffered by Adreya Harden's heir, Plaintiff Sa'Raya Harden, including, without limitation: damages for pre-death physical and emotional pain and suffering; lost future earnings and earning capacity; and physical loss of chance of survival; loss of service, support, society, companionship, love, and affection of Adreya Harden; and any medical, funeral, and/or burial expenses incurred due to Adreya Harden's wrongful death;

d. Punitive damages against Defendants Rava and Doe(s) 6-10 for their violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983 (Counts IX and X), in an amount to be determined at trial;

e. Compensatory damages, punitive damages, attorneys' fees, costs, and pre- and post-judgment interest against Defendants Doe(s) 1-5 for (Counts XI and XII);

f. Pre- and post-judgment interest, as appropriate, on any damages awarded to Plaintiff (all Counts);

g. Attorneys' fees, expenses, and costs, pursuant to 42 U.S.C. § 1988 (all Counts); and

h. Any other and further relief as this Court may deem just and proper (all Counts).

***REMAINDER OF PAGE INTENTIONALLY LEFT BLANK***

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all triable issues, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 2, 2023

*/s/ Nathaniel L. Foote*
Nathaniel L. Foote, Esq. (PA #318998)
nate@vca.law

*/s/ Renee Franchi*
Renee Franchi, Esq. (PA #313950)
renee@vca.law

4503 North Front Street
Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143
*Attorneys for Plaintiff*