## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SA'RAYA HARDEN, | : | CIV. NO. 3:23-CV-01631 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| WEST SIDE CAREER AND | : | |
| TECHNOLOGY CENTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

The plaintiff, Sa'Raya Harden ("Harden"), has filed a complaint based on the treatment of her daughter, Adreya Harden ("Adreya"), prior to Adreya's death by suicide.  Harden brings claims against Adreya's school, school district, principal, five of her teachers (collectively "the school defendants" or "the movants") and five of her classmates.  Currently pending is the school defendants' partial motion to dismiss.  For the reasons that follow, we will grant in part and deny in part the partial motion to dismiss.

### II.  Background and Procedural History.

Harden initiated this action by filing a complaint on October 2, 2023. *Doc. 1.* Harden filed the complaint as Adreya's mother, and the administrator of Adreya's

estate. *Doc. 1* ¶ 16.  Harden names 13 defendants: (1) Wyoming Valley School District ("the District"); (2) West Side Career and Technology Center ("Tech"); (3) Richard Rava, the Principal of Tech ("Principal Rava"); (4) "Doe(s) 1–5[,]" "students within Tech and/or the District" ("the unidentified student defendants"); and (5) "Doe(s) 6–10[,]" "adult employees and/or agents of Tech and/or the District" ("the unidentified employee defendants"). *Id.* ¶¶ 1, 21, 25, 28, 30, 32–35. Harden brings the following claims: (1) Title IX claims against both the District and Tech for deliberate indifference to student-on-student sex-based harassment and intentional sex-based discrimination by a school administrator (contained in counts one, two, three, and four) (*id.* ¶¶ 123–71); (2) § 1983 claims for failure to train against the District, Tech, Principal Rava, and the unidentified employee defendants (contained in counts five and six) (*id.* ¶¶ 172–215); (3) § 1983 claims for sex-based discrimination in violation of the equal protection clause against the District, Tech, Principal Rava, and the unidentified employee defendants (contained in counts seven, eight, nine, and ten) (*id.* ¶¶ 216–59); (4) state law claims for gross negligence and/or recklessness against the unidentified student defendants (contained in count eleven) (*id.* ¶¶ 260–66); and (5) state law claims for intentional infliction of emotional distress against the unidentified student defendants (contained in count twelve) (*id.* ¶¶ 267–70).

The movants filed a partial motion to dismiss, which is now pending ("pending motion to dismiss"). *Doc. 8.* After the pending motion to dismiss was fully briefed (*docs. 11, 13*), the parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636 (c) (*doc. 18*). The case is currently governed by a case management order, with fact discovery to conclude on or before October 30, 2024. *Doc. 21.*

### A.  Events Depicted in the Complaint.[1]

The impetus of the present case is Adreya's death by suicide, which occurred on October 5, 2021, when Adreya was 15 years old. *Doc. 1* ¶¶ 37, 41. Although when she was born her parents named her Andrew, "[a]t Adreya's request, [her] family and friends began calling her 'Adreya[.]'" *Id.* ¶¶ 42, 43. Adreya was a "transgender female" (*id.* ¶ 1) and "came out publicly as LGBTQIA+ in sixth . . . grade as a student in the District" (*id.* ¶ 44).

"After coming out, Adreya was not comfortable in a traditional school setting" "due, in relevant part, to the harassment and bullying" Adreya experienced at the hands of her classmates, including the unidentified student defendants. *Id.* ¶¶ 45, 46. "Instead of addressing the bullying and harassment . . . , the District allowed Adreya to receive her education through private after-hours instruction by

---

[1] The following facts are taken from the complaint.

3

a teacher at the local library" ("alternative instruction"). *Id.* ¶ 47.  Thus, for the remainder of the 2018–2019 school year, and for the entirety of the 2019–2020 school year, Adreya participated in this alternative instruction and completed the sixth and seventh grades. *Id.* ¶ 47.

Because the alternative instruction was unavailable for the 2020–2021 school year due to COVID-19, for eighth grade Adreya attended school at the District over Zoom. *Id.* ¶¶ 48, 49.  Throughout the eighth grade, "Adreya repeatedly asked her teachers, including [the unidentified employee defendants] to call her 'Adreya' or, at the very least, refer to her by her last name[.]" *Id.* ¶ 50. Adreya's teachers, including the unidentified employee defendants, "refused her request" and "continued to call her 'Andrew' in front of her classmates." *Id.* ¶¶ 51, 52.  "This treatment caused Adreya to feel humiliated, depressed, and isolated from her peers." *Id.* ¶ 54.  As a result of her teachers' "adverse treatment[,]" "Adreya's grades, participation in school, and mental health suffered tremendously." *Id.* ¶ 56. "Adreya stopped participating in her [eighth] grade classes to avoid being singled out and mistreated by her teachers, [the unidentified employee defendants]." *Id.* ¶ 57.  Moreover, the teachers' treatment of Adreya "emboldened" Adreya's classmates, including the unidentified student defendants, "to bully and harass Adreya[.]" *Id.* ¶ 55.

"The District failed to take any steps to address the bullying and harassment [Adreya] suffered" (*id.* ¶ 59), despite the fact that Harden "notified the District [that] Adreya experienced sex-based harassment by her classmates" (*id.* ¶ 139). During her time as a student at the District, "Adreya was prohibited from attending the programming of her choice; her grades and academic performance suffered; and she suffered serious emotional and psychological harm, including depression, self-cutting, and suicidal thoughts." *Id.* ¶ 143.  And, according to the complaint, "the District, through [the unidentified employee defendants] . . . knew that Adreya was experiencing serious mental health issues, including depression, suicidal ideation, and self-harming behavior." *Id.* ¶ 163.

"Eventually, Adreya's mental health declined to such an extent that she began missing class and was considered truant." *Id.* ¶ 58.  As a result, "Adreya was brought before Magisterial District Judge Hagerty on truancy charges." *Id.* ¶ 60. After Magisterial District Judge Hagerty "heard about the harassment and mistreatment that Adreya suffered[,]" however, "he refused to find Adreya truant." *Id.* ¶ 61.  "Instead, [he] ordered that Adreya be allowed to enter the 2021–2022 school year in ninth . . . grade." *Id.* ¶ 62.  Adreya, who loved cosmetology, was excited to enroll in Tech "for her ninth . . . grade year[.]" *Id.* ¶ 70, 71.

"At or about" the time of Magisterial District Judge Hagerty's decision, "Adreya had already begun transitioning from male to female" and "was preparing

5

to start hormone therapy." *Id.* ¶ 63, 64.  Adreya and Harden also "filed a Petition in Luzerne County Court of Common Pleas to legally change Adreya's name from 'Andrew' to 'Adreya.'" *Id.* ¶ 65.  Adreya referred to Andrew as her "dead name." *Id.* ¶ 76.  "Due to COVID-19, the hearing on Adreya's name change petition was continued several times" but it "was finally scheduled for November 1, 2021." *Id.* ¶ 66, 67.  Accordingly, Adreya began the school year prior to her name being legally changed. *Cf.* ¶ 68.  In fact, Adreya's name was legally changed posthumously. *Id.* ¶ 69.

"After the school year started," Harden brought Adreya's then-pending name change petition and the legal paperwork from Magisterial District Judge Hagerty to a meeting between herself, Adreya, and Adreya's counselor at Tech, Mr. Ogurkis. *Id.* ¶ 72, 74.  "Immediately upon meeting with Mr. Ogurkis, Adreya and [Harden] felt unwelcome and uncomfortable." *Id.* ¶ 73.  Harden "explained to Mr. Ogurkis that Adreya was transitioning and preferred to be referred to as Adreya, not Andrew." *Id.* ¶ 75.  "Mr. Ogurkis was unwelcoming to Adreya and told her that she might 'have a hard time fitting in' at Tech." *Id.* ¶ 77.  When Harden "asked Mr. Ogurkis about how supporting Tech was of the LGBTQIA+ community[,]" (*id.* ¶ 82) "Ogurkis told [Harden] and Adreya that she would be the only transgender student but there were classes where she 'could go' if she needed a safe space" (*id.* ¶ 83).  During this meeting, Harden and "Adreya also asked to

enroll Adreya in the cosmetology program at Tech." *Id.* ¶ 78. "Mr. Ogurkis refused" and instead enrolled Adreya in the Food Marketing and Distribution program. *Id.* ¶¶ 79, 80. Harden "and Adreya left the meeting with Mr. Ogurkis feeling even more uncomfortable and unsupported." *Id.* ¶ 84. "After Adreya's death, [Harden] spoke with the director of Tech's Cosmetology program[;] they said that they were not informed that Adreya wanted to enroll in Cosmetology, but had they known, they would have allowed Adreya in the program." *Id.* ¶ 81.

"Adreya started at Tech on Monday, September 27, 2021, several weeks after the school year had already started." *Id.* ¶ 85. "Adreya told her mother that some of the teachers, including [the unidentified employee defendants] called Adreya by her 'dead name[,]' Andrew[,] in front of the whole class during roll call." *Id.* ¶ 86. "Adreya's teachers, including [the unidentified employee defendants] refused to call her 'Adreya' despite requests to do so." *Id.* ¶ 87. "Adreya's classmates, including [the unidentified student defendants,] bullied and harassed Adreya incessantly about her sex during the short amount of time that Adreya attended Tech." *Id.* ¶ 88. For example, the unidentified student defendants asked Adreya "if she still had male genitalia and whether she was going to 'chop that [penis] off.'" *Id.* ¶ 89 (alteration in original). By way of further example, "[a]s Adreya was leaving school one day, a car pulled up alongside her on the school

driveway and blew the horn loudly enough that it scared Adreya and caused her to fall to the ground." *Id.* ¶ 94.

"While Adreya was at Tech, one of her teachers, Tom Pieczynski emailed [Principal] Rava approximately three . . . times, notifying Rava that Adreya was being bullied and harassed about her sex." *Id.* ¶ 90.  Despite this notice, neither Rava nor Tech took any "action in response to the bullying and harassment suffered by Adreya." *Id.* ¶¶ 91, 92.  "Adreya was so traumatized and humiliated by the treatment she received at Tech by [the unidentified student defendants] and [the unidentified employee defendants] that she refused to go anymore" and "begged [Harden] not to send her back to Tech." *Id.* ¶¶ 94, 95.

"The last time [Harden] saw or spoke with Adreya was the night of Monday, October 4, 2021." *Id.* ¶ 96.  "The morning of October 5, 2021, Adreya was found unresponsive in her bed." *Id.* ¶ 97.  "Adreya passed away by suicide on October 5, 2021[,]" "due to an intentional overdose of her medication." *Id.* ¶ 98, 99. "Although Adreya did not leave a suicide note, prior to her death, Adreya had changed her Instagram status to deceased." *Id.* ¶ 100.

### B.  Tech's and the School District's Relevant Policies and Training Practices.

While Adreya attended the school district, during the 2018–2019, 2019–2020, and 2020–2021 school years, the District had a policy manual which

"included policies prohibiting harassment, bullying, and hazing by employees and students" but did not include policies regarding suicide prevention or Title IX. *Id.* ¶¶ 113–15. The policies that addressed harassment, bullying, and hazing were the District's policy number 248 ("District Policy 248"), titled "Unlawful Harassment[,]" and District's policy number 249 ("District Policy 249"), titled "Bullying/Cyberbullying[.]" *Id.* ¶ 116, 117. "According to District Polic[ies] 248 and . . . 249, there are specific requirements that District employees are required to take when a student is a victim of bullying/cyberbullying, including but not limited to reporting violations to the District's principal or principal's designee, and the allegation must be investigated." *Id.* ¶ 119 (quoting *doc. 1-2*).

The unidentified student defendants and the unidentified employee defendants, according to the complaint, all "engaged in harassment,[2] bullying,[3]

---

[2] District Policy 248 defines harassment as "verbal, written, graphic or physical conduct relating to an individual's race, color, national origin/ethnicity, sex, age, disability, sexual orientation or religion when such conduct; A. Is sufficiently severe, persistent or pervasive that it affects an individual's ability to participate in or benefit from an educational program or activity or creates an intimidating, threatening or abusive educational environment; B. Has the purpose of effect of substantially or unreasonably interfering with an individual's academic performance; C. Otherwise adversely affects an individual's learning opportunities." *Id.* ¶ 116 (cleaned up) (quoting *doc. 1-2*).

[3] District Policy 249 defines bullying as "a form of harassment in which behavior is intended, or perceived to intend, to harm or cause distress to another. The action occurs repeatedly over time and, in addition to causing harm or distress, has the effect of insulting or demeaning a student or group of students in such a way as to cause disruption of the orderly operation of the school. It may include,

and cyberbullying[4] in violation of the District's policies." *Id.* ¶¶ 120, 121 (cleaned up and footnotes added) (citing *doc. 1-2*).  Moreover, "[t]he District failed to follow its own policies as it relates to the incessant harassment and bullying of Adreya." *Id.* ¶ 122.

While Adreya attended Tech in the 2021–2022 academic year, "Tech's policy manual included policies prohibiting harassment, bullying, and hazing by employees and students" but not a suicide prevention policy. *Doc. 1* ¶¶ 101, 102.  Specifically, Tech's policy number 249 ("Tech Policy 249"), "Bullying/Cyberbullying," addressed bullying and cyberbullying, and Tech's policy number 103 ("Tech Policy 103"), "Discrimination/ Title IX Sexual Harassment Affecting Students[,]" addressed discrimination and sexual harassment. *Doc. 1* ¶¶ 103, 106.

---

but is not limited to, actions such as verbal taunts, physical aggression, exclusion from peer groups within the school, name calling, and derogatory statements, including any discriminatory statement." *Id.* ¶ 117 (cleaned up) (quoting *doc. 1-2*).

[4] District Policy 249 defines cyberbullying as "the following misuses of technology: harassing, teasing, intimidating, threatening, or terrorizing another student or staff member by way of any technological tool, such as sending or posing inappropriate or derogatory email messages, instant messages, text messages, digital pictures or images, or web site postings (including blogs), which has the effect of: A. physically, emotionally or mentally harming a student; B. Placing a student in reasonable fear of physical, emotional or mental harm; C. Placing a student in reasonable fear of damage to or loss of personal property; D.  Creating an intimidating or hostile environment that substantially interferes with a student's educational opportunities." *Id.* ¶ 118 (cleaned up) (quoting *doc. 1-2*).

Tech Policy 249 states:

> Every report of alleged bullying that can be interpreted at the
> outset to fall within the provisions of policies addressing
> potential violations of laws against discrimination and
> discriminatory harassment shall be handled as a joint,
> concurrent investigation into all allegations and coordinated
> with the full participation of the Compliance Officer and Title
> IX coordinator.  If, in the course of a bullying investigation,
> potential issues of discrimination are identified, the Title IX
> Coordinator shall be promptly notified, and the investigation
> shall be conducted jointly and concurrently to address the issues
> of alleged discrimination as well as the incidents of alleged
> bullying.

*Id.* ¶ 105 (quoting *doc. 1-2*) (internal quotation marks omitted). "According to

Tech Policy 249, 'verbal and written complaints of bullying shall be investigated

promptly, and appropriate corrective or preventative action shall be taken when

allegations are substantiated.'" *Id.* ¶ 104.  "Tech Policy 103 directs any employee

who 'suspects or is notified that a student has been subject to conduct that

constitutes a violation of this policy shall immediately report the incident to the

building administrator . . . the building administrator shall promptly notify the Title

IX Coordinator of all reports of discrimination, Title IX sexual harassment or

retaliation." *Id.* ¶ 109 (quoting *doc. 1-2*).

The unidentified student defendants and the unidentified employee

defendants, according to the complaint, all "engaged in discrimination,[5]

_____

[5] Tech Policy 103 defines discrimination as "to treat individuals differently,
or to harass or victimize based on a protected classification including race, color,

harassment,[6] Title IX Sexual Harassment,[7] bullying,[8] and cyberbullying[9] in

violation of . . . Tech's policies." *Id.* ¶¶ 110, 111 (cleaned up and footnotes added).

---

age, creed, religion, sex, sexual orientation, ancestry, national origin, marital
status, pregnancy, or handicap/disability." (*id.* ¶ 106) (quoting *doc. 1-2*) (internal
quotation marks).

[6] Tech Policy 103 defines harassment as "a form of discrimination based on
the protected classifications listed in this policy consisting of unwelcome conduct
such as graphic, written, electronic, verbal or nonverbal acts, including offensive
jokes, slurs, epithets and name-calling, ridicule or mockery, insults or put-downs,
offensive objects or pictures, physical assaults or threats, intimidation, or other
conduct that may be harmful or humiliating or interfere with a person's school or
school related performance when such conduct is: A. Sufficiently severe, persistent
or pervasive; and B. A reasonable person in the complainant's position would find
that it creates an intimidating, threatening, or abusive educational environment
such that it deprives or adversely interferes with or limits an individual or group of
the ability to participate in or benefit from the services, activities, or opportunities
offered by [Tech]." (*id.* ¶ 107) (quoting *doc. 1-2*) (cleaned up).

[7] Tech Policy 103 defines Title IX Sexual Harassment as "conduct on the
basis of sex that satisfies one or more of the following" including "unwelcome
conduct determined by a reasonable person to be so severe, pervasive and
objectively offensive that it effectively denies a person equal access to a [Tech]
education program or activity" (*id.* ¶ 108) (quoting *doc. 1-2*) (internal quotation
marks) (alteration in original).

[8] Tech Policy 249 defines bullying as "intentional electronic, written, verbal
or physical act or series of acts directed at another student or students, which
occurs in a school setting that is severe, persistent or pervasive and has the effect
of doing any of the following: A. Substantially interfering with a student's
education and/or B. Creating a threatening environment." *Id.* ¶ 103 (cleaned up)
(quoting *doc. 1-2*).

[9] The complaint does not include a definition of cyberbullying from a Tech
Policy. *See doc. 1.*

"Tech failed to follow its own policies as it relates to the incessant harassment and bullying of Adreya." *Id.* ¶ 112.

Furthermore, the District and Tech both "failed to provide such training to its administrators, teachers, staff, students, and families, despite the patently obvious need for training on, among other things, sex-based harassment of students, including LGBTQIA+ harassment, and identifying, investigating, reporting, stopping, and remedying the effects of discrimination and harassment against LGBTQIA+ students." *Id.* ¶ 181.  The District and Tech failed to provide this training despite the fact that "[n]umerous authorities, including federal courts, made it clear and had given notice to Tech and other public school that school employees will confront LGBTQIA+ harassment and discrimination with regularity, given the high predictability, recurrence, prevalence, and injurious nature of such harassment and discrimination in schools." *Id.* ¶ 182.  According to the complaint, "it was foreseeable and inevitable that the District's administrators and employees would encounter recurring situations involving LGBTQIA+ harassment and discrimination implicating students' Constitutional and federal rights, and they did, in fact, encounter those recurring situations." *Id.* ¶ 182.

### III.  Pleading and Motion-to-Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

In making that determination, "[g]enerally, 'a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  In addition to considering the allegations of a complaint, in connection with a 12(b)(6) motion, the court may consider "'exhibits attached to the complaint and matters of public record.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  "Further, courts may consider exhibits attached to a defendant's motion to dismiss if it is 'an undisputedly authentic document' and 'plaintiff's claims are based on the document.'" *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (quoting *Pension Benefit Guar. Corp.*, 998 F.2d

14

at 1196).  In other words, the court may consider "document[s] *integral to or explicitly relied* upon in the complaint" in connection with a 12(b)(6) motion. *Schmidt*, 770 F.3d at 249 (italics in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true

and construe the complaint in the light most favorable to the nonmoving party.'"

*Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v.*

*Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to

dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A

court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff

has not alleged." *Associated Gen. Contractors of Cal. v. California State Council*

*of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more

than mere legal labels and conclusions. Rather, it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. In practice, consideration of the legal sufficiency of a complaint

entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff
> must plead to state a claim." Second, the court should identify
> allegations that, "because they are no more than conclusions,
> are not entitled to the assumption of truth." Finally, "where
> there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

16

In sum, "[w]e accept as true all factual matters [the plaintiff] alleges, but his complaint cannot survive unless the facts it recites are enough to state plausible grounds for relief." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But "[a] claim that relies just on 'conclusory statements,' or on 'threadbare recitals of the elements of a cause of action' without supporting factual allegations, does not establish plausible grounds for relief." *Id.* (quoting *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020)).

## IV.  Discussion.

Although the complaint identifies 12 counts, only 10 of those counts contain claims against the school defendants. *See doc. 1.* Count One, against Tech, and Count Two, against the District, are both brought for deliberate indifference to student-on-student sex-based harassment pursuant to Title IX. *Id.* ¶¶ 123–46. Count Three, against Tech, and Count Four, against the District, are both brought for intentional sex-based discrimination by school administrators pursuant to Title IX. *Id.* ¶¶ 147–71. Count Five, against Tech and Principal Rava, and Count Six, against the District and the unidentified employee defendants, are both brought for

failure to train pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 172–215.  The final four counts

are brought for sex-based discrimination in violation of the Equal Protection

Clause of the Fourteenth Amendment of the United States Constitution pursuant to

§ 1983: count seven, against Tech; count eight, against the District; count nine,

against Principal Rava; and count ten, against the unidentified employee

defendants. *Id.* ¶¶ 216–59.

 The pending motion to dismiss addresses only six of the ten counts listed

above. *See doc. 11.*  The movants seek to dismiss:

> (1) Count Two against the District for deliberate indifference to
> student-on-student sex-based harassment pursuant to Title IX
> (*id.* ¶¶ 135–46);
> (2) Count Four against the District for intentional sex-based
> discrimination by school administrators pursuant to Title IX (*id.*
> ¶¶ 160–71);
> (3) Count Five against Tech and Principal Rava for failure to
> train pursuant to § 1983 (*id.* ¶¶ 172–93);
> (4) Count Six against the District and the unidentified employee
> defendants for failure to train pursuant to § 1983 (*id.* ¶¶ 194–
> 215);
> (5) Count Nine against Principal Rava for sex-based
> discrimination in violation of the Equal Protection Clause
> pursuant to § 1983 (*id.* ¶¶ 238–48); and
> (6) Count Ten against the unidentified employee defendants for
> sex-based discrimination in violation of the Equal Protection
> Clause pursuant to § 1983 (*id.* ¶¶ 249–59).

Thus, regardless of our decision on the pending motion to dismiss, the Title IX

claims against Tech contained in counts one and three and the § 1983 claims

against Tech and the District contained in counts seven and eight will survive.

**A.  Title IX claims against the District.**

As discussed above, Harden brings two Title IX claims against the District, one for deliberate indifference to student-on-student sex-based harassment and the second for intentional sex-based discrimination by school administrators. *Doc. 1* ¶¶ 135–46, 160–71.

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving [f]ederal financial assistance." 20 U.S.C. § 1681(a).  Although "Title IX provides just one *express* enforcement mechanism[,] action through federal agencies[,]" *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 559 (3d Cir. 2017) (citing 20 U.S.C. § 1682), the Supreme Court held that it also implies a private right of action, *Zavada v. East Stroudsburg University*, NO. 3;22-CV-01074, 2023 WL 5532809, *3 (M.D. Pa. Aug. 28, 2023) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979)).  To state such a claim for student-on-student harassment, a plaintiff must prove the following elements:

> (1) the defendant receives federal funds; (2) sexual harassment occurred; (3) the harassment was 'so severe, pervasive, and objectively offensive that it could be said to have deprived the victims of access to the educational opportunities or benefits provided by the school;' (4) the harassment occurred under 'circumstances wherein the recipient exercised substantial control over both the harasser and the context in which the known harassment occurred'; (5) the funding recipient 'had

> knowledge' of the harassment; and (6) the funding recipient
> was 'deliberately indifferent' to the harassment.

*Zavada*, 2023 WL 5532809 at *3 (cleaned up) (quoting *A.T. v. Oley Valley Sch.*

*Dist.*, No. CV 17-4983, 2021 WL 5792695, at *18 (E.D. Pa. Dec. 7, 2021)) (itself

quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

Title IX also "encompasses sexual harassment of a student by a teacher[.]"

*Dipippa v. Union School Dist.*, 819 F.Supp.2d 435, 447 (W.D. Pa. 2011) (citing

*Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75–76, 112 S.Ct. 1028, 117

L.Ed.2d 208 (1992)).  "To succeed on a Title IX sexual harassment claim, a

student must show: (1) quid pro quo sexual harassment, or a sexually hostile

educational environment; (2) actual notice by an 'appropriate person' who has the

authority to take corrective measures; and (3) a response to the harassment that

amounts to deliberate indifference." *Id.* (citing *Bennett v. Pa. Hosp. Sch. of Nurse*

*Anesthesia*, NO. Civ.A. 01-CV-4098, 2020 WL 32341792 at *3 (E.D. Pa. Oct. 29,

2002)) (itself citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118

S.Ct. 1989, 141 L.Ed.2d 277 (1998)).

The movants at this juncture dispute only that the District had "actual

knowledge" of the harassment Adreya experienced at the hands of the unidentified

student defendants or unidentified employee defendants. *See doc. 11* at 9–10.

"For a school district to be liable under Title IX's private right of action, an

appropriate person must have actual knowledge of sex-based harassment and must

respond with deliberate indifference." *M.S. by and through Hall v. Susquehanna Township School District*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Gebser*, 524 U.S. at 290). "An appropriate person is 'an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Id.* (citing *Gebser*, 524 U.S. at 290). "The actual knowledge requirement forecloses damages liability based 'solely on principles of vicarious liability or constructive notice' and avoids the 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions.'" *Id.* at 125–26 (quoting *Gebser* at 288, 290–91). Moreover, "a perpetrator's knowledge of his own Title IX discrimination does not satisfy [the] actual-knowledge requirement even if the perpetrator would otherwise be an appropriate person[.]" *M.S. by and through Hall*, at 127 (citing *Gebser*, 524 U.S. 274). "To the contrary, for a school district to have actual knowledge, a report must be made to an appropriate person who is not the perpetrator." *Id.*

The movants argue that "[t]he Complaint fails to identify that an appropriate person at the School District had knowledge of the alleged harassment." *Doc. 11* at 10. They further argue that "[t]he actions of teachers, or notice of student-on-student harassment to teachers, is insufficient to hold the School District liable for damages under Title IX as the same do not amount to appropriate persons." *Id.* Harden counter-argues that "the District" had actual knowledge that Adreya was "a

transgender youth" and, accordingly, an "at-risk youth[.]" *Doc. 13* at 18. Specifically, Harden points to Harden "work[ing] with the District's representatives[,]" specifically "officials – not just mere teachers[,]" to coordinate Adreya's alternative instruction. *Id.* at 18, 19.  Harden further argues that Adreya "repeatedly asked the District to cease calling her by her 'dead name[,]'" a request that was refused by "the District's employees[.]" *Id.* at 18–19. Harden specifically opines that she has not yet participated in discovery and cannot ask Adreya "specifically which other individuals she communicated with at the District" because she is unfortunately deceased. *Id.* at 19.  It follows, according to Harden, that the Movants' "motion is premature" and Harden "is entitled to discovery." *Id.* at 20.

While we are sympathetic with Harden's difficulties in identifying the individuals to whom Adreya reported her harassment, Harden would not have the same difficulties identifying those individuals that she herself spoke to in order to coordinate Adreya's participation in the alternative instruction and report some of Adreya's experiences.  Moreover, a conclusory assertion that she is "entitled to discovery" will carry no weight.  Instead, we look to what is required of Harden's allegations in the complaint.

Harden is required, as discussed above, to assert that an appropriate person with the "authority to address the alleged discrimination and to institute corrective

measures on the recipient's behalf[,]" *M.S. by and through Hall*, 969 F.3d at 125, had actual knowledge of Adreya's harassment.  This she has not done.  Instead, throughout the complaint, she refers to actions taken by "the District[.]" *See doc. 1*. This anthropomorphizing of the District is not sufficient to plead that an appropriate person had knowledge of Adreya's harassment. *Cf Moss v. Pennsylvania State University*, No. 4:22-CV-00529, 2023 WL 1456773, *7 ("First, although Boland's title suggests he is an 'appropriate person' under Title IX, his title alone is an insufficient allegation. . . . As noted above an 'appropriate person' must have the 'authority to address the alleged discrimination and to institute corrective measures on the [institution's] behalf.'  Moss fails to allege any facts regarding Boland's authority to address Glon's misconduct.").

We will thus grant the school defendants' pending motion to dismiss insofar as it seeks dismissal of the Title IX claims against the District.  We will, however, grant Harden leave to amend her complaint as to these claims.

**B.  § 1983 claims for failure to train against Tech and the District.**

Harden also brings claims against Tech and the District pursuant to 42 U.S.C. § 1983 for failure to train their employees.  A school or school district's "failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *See Reitz v. County of*

23

*Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)); *see also E.N. v. Susquehanna Tp. School Dist.*, No. 1:09-CV-1727, 2011 WL 3608544, *6–*7 (M.D. Pa. July 5, 2011).   But "[e]stablishing municipal liability on a failure to train claim under § 1983 is difficult." *Reitz*, 125 F.3d at 145.

To state a § 1983 claim for failure to train, the plaintiff must allege that the "failure to train amounts to deliberate indifference to the rights of persons with whom the [school employees] come into contact." *Id.* (quoting *City of Canton*, 489 U.S. at 388) (internal quotations omitted).   Further, a defendant can be held liable for failure to train "[o]nly where a failure to train reflects a deliberate or conscious choice[.]" *Id.*   "A plaintiff pressing a §1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Id.* (citing *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1030 (3d Cir. 1991)).   "When a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee." *Id.* (citing *Board of*

*Commissioners of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388–89,

137 L.Ed.2d 626 (1997)).

"Policymakers' 'continued adherence to an approach that they know or

should know has failed to prevent tortious conduct by employees may establish the

conscious disregard for the consequences of their action—the 'deliberate

indifference'—necessary to trigger municipal liability.'" *Connick v. Thompson*,

563 U.S. 51, 62 (2011) (quoting *Brown*, 520 U.S. at 409).  "Without notice that a

course of training is deficient in a particular respect, decisionmakers can hardly be

said to have deliberately chosen a training program that will cause violations of

constitutional rights." *Id.*  Thus, "[g]enerally, a deficient training can only amount

to the requisite deliberate indifference 'where the failure to train has caused a

pattern of violations.'" *E.N.*, 2011 WL 3608544 at *7 (quoting *Berg v. County of

Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)).  But a failure to train claim may also

proceed where "(1) 'a violation of federal rights may be a highly predictable

consequence of a failure to equip [school officials] with specific tools [or skills] to

handle recurrent situations,' and (2) the likelihood of recurrence and predictability

of the violation of a citizen's rights 'could justify a finding that [the] policymakers'

decision not to train an officer reflected "deliberate indifference" to the obvious

consequence of the policymakers' choice—n mely, a violation of a specific

constitutional or statutory right.'" *Id.* (quoting *Kline ex rel. Arndt v. Mansfield*, 255 Fed.Appx. 624, 629 (3d Cir. 2007)) (itself quoting *Brown*, 520 U.S. at 409).

The movants argue that the complaint "fails to identify notice to [Tech] and [the] School District officials that its training is deficient[.]" *Doc. 11* at 12. Instead, according to the movants, the complaint "allege[es] that better training would prevent the injur[y]" described. *Id.*  The movants further argue that "the [c]omplaint fails to establish causation[.]" *Id.*  Accordingly, the movants conclude, Harden has failed to allege that Tech and the School District were deliberately indifferent. *Id.* at 13.

Harden counter-argues that "[a] reasonable jury could conclude, based on the frequency of reports from [Harden] and Adreya, the open and obvious bullying by her peers, and the fact that it is common knowledge that LGBTQIA+ and specifically transgender youths are at high risk of bullying and related suicide, and the likelihood that the situation will recur, demonstrates deliberate indifference on Defendants' parts." *Doc. 13* at 22.  Harden points to the three separate reports of bullying to Principal Rava, the reports made by Adreya and Harden to the School District, and the comments by agents of Tech and the District that they are "not equipped to deal with transgender students." *Id.* at 22–23.  Harden asserts that Tech's and the District's policies were "woefully insufficient" and that what protections were created by the policies were ignored. *Id.* at 23.  Harden concludes

that such failure did in fact cause harm to Adreya "and ultimately, [her] death[.]" *Id.* Further, according to Harden, the wide spread nature of "school-based bullying and [the] suicide epidemic" creates an obvious need for relevant training. *Id.* at 22.

As described above, failure to train claims need not depend on a pattern of violations and can instead rely on a theory that the need for training is "so obvious that failure to do so could properly be characterized as deliberate indifference to constitutional rights[.]" *Brown*, 489 U.S. at 390 n.10. In her complaint, Harden alleges that the District was aware of a pattern of bullying against Adreya because both Adreya and Harden frequently complained of her mistreatment, as well as the District's awareness of Adreya's participation in alternate instruction and the reasons for its necessity. Harden also alleges that Tech was aware of the incessant bullying Adreya experienced at Tech based on the reports of Adreya's teacher, Tom Pieczynski, to Principal Rava. Moreover, Harden is proceeding on a theory that the risk of a deprivation of students' civil rights was obvious. *Cf Tumminello v. Father Ryan High School, Inc.*, 678 Fed.Appx. 281, 288 (6th Cir. 2017) ("If a school *is aware* of a student being bullied but does nothing to prevent the bullying, it is reasonably foreseeable that the victim of the bullying might resort to self-harm, even suicide."). As to causation, Harden alleges that the bullying Adreya experienced while a student at the District and Tech severely impacted her mental health which resulted in her death. And Harden alleges that the schools' failure to

address this bullying not only allowed it to continue but made it more brazen.  At this early stage of the proceedings and viewing the complaint in a light most favorable to Harden, we find she has adequately pled the District's and Tech's deliberate indifference.

### C.  Claims against Principal Rava and the unidentified employee defendants.

Harden brings two claims against Principal Rava and each unidentified employee defendant: one for failure to train and the other for sex-based discrimination in violation of the equal protection clause. *Doc. 1* ¶¶ 172–215, 238–59.  Both claims are brought pursuant to 42 U.S.C. § 1983. *Id.*  The movants argue that Principal Rava and the unidentified employee defendants are entitled to qualified immunity from these claims. *Doc. 11* at 14–15.  Specifically, the movants argue that Principal Rava and the unidentified employee defendants "would not believe their actions would violate a clearly established constitutional right." *Id.* at 15.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)).  Qualified immunity ensures that before officers are subjected to suit, they have notice that their conduct is unlawful. *Id.*  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19.

The qualified immunity analysis has two prongs. *Pearson*, 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.*  The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first considering the circumstances of the particular case. *Pearson*, 555 U.S. at 236.

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). In other words, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of persuasive authority.'" *Id.* at 589– 90 (internal citations omitted).  "It is not enough that the rule is suggested by then-

existing precedent." *Id.* at 590.  Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

Still, "the facts of the existing precedent need not perfectly match the circumstances of the dispute in which the question arises." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017).  "A public official does not get the benefit of 'one liability-free violation' simply because the circumstance of his case is not identical to that of a prior case." *Peroza-Benitez v. Smith*, 994 F.3d 157, 166 (3d Cir. 2021) (quoting *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004)).

But if the law did not put the defendant on notice that his conduct would be clearly unlawful, qualified immunity is appropriate. *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009).  "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)).  "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

"At the Rule 12(b)(6) stage, immunity must be 'established on the face of the complaint.'" *Gatto v. Lackawanna Cnty.*, NO. 3:20-CV-1684, 2021 WL 4502261, at *9 (M.D. Pa. Sept. 30, 2021) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)).  "Defendants asserting that they are entitled to qualified immunity have the burden to prove that the doctrine applies." *Hewlette-Bullard on behalf of J.H-B. v. Pocono Mouontain School District*, 522 F.Supp.3d 78, 104–05 (M.D. Pa. 2021).  Although qualified "immunity questions should be resolved 'at the earliest possible stage in litigation[,]" "our court of appeals has cautioned that 'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) and *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009)).

According to the movants, the complaint alleges that the unidentified employee defendants referred to Adreya by her legal name, as reflected in educational records. *Doc. 11* at 15.  The movants argue that "[b]ased on the same, it is reasonable to conclude that [the unidentified employee defendants] would not believe their actions would violate a clearly established constitutional right." *Id.* As to Principal Rava, the movants argue that "[a]lthough the [c]omplaint alleges that he did nothing during" the seven days Adreya attended Tech, "it is reasonable to conclude that [Principal] Rava would not believe that any alleged inaction

during that short timeframe would violate a clearly established constitutional right." *Id.*

Harden disagrees. *Doc. 13* at 23–27. Harden cites a Tenth Circuit holding "that a state-created danger claim arose where school officials sent a student home after he was acting up in school, despite knowing that he was having suicidal thoughts, he had access to firearms in his house, and his parents were not home." *Id.* at 25 (citing *Armijo by and through Chavez v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1264 (10th Cir. 1998)). Harden also points out that the movants' summary of Principal Rava's and the unidentified employee defendants' actions conveniently omits allegations against them in the complaint. *Id.* at 26–27. Harden also reiterates her belief that she is entitled to discovery. *Id.*

The movants do not engage with the allegations against the unidentified employee defendants in the complaint. Instead, the movants only address the allegations that the unidentified employee defendants referred to Adreya by her legal name. But, according to the complaint, the unidentified employee defendants not only referred to Adreya by her legal name but did so *despite repeat requests not to*. Further, the complaint alleges that Adreya was "singled out and mistreated by her teachers, [the unidentified employee defendants]" (*doc. 1* ¶ 57), and that they harassed, bullied, cyberbullied, and discriminated against her in violation of the District's and Tech's policies (*id.* ¶¶ 110–11, 120–21). The movants do not

address these allegations at all.  Moreover, the defendants make no attempt to

address the two unique claims against the unidentified employee defendants.

Proving that they are entitled to qualified immunity is the movants' burden.  *See*

*Hewlette-Bullard on behalf of J.H-B.*, 522 F.Supp.3d at 104–05.  Accordingly, we

will deny the pending motion to dismiss in so far as it seeks qualified immunity for

the unidentified employee defendants.

      As to Principal Rava, the movants appear to argue that the time between

September 27, 2021—when Adreya began at Tech—and October 5, 2021—when

Adreya died by suicide—is too short for any inaction to amount to a clearly

established constitutional violation.  But the movants do no more than set forth this

conclusion.  And neither party points to any case law that sets forth a bright line

rule of how long a school official can wait before taking action when faced with

such reports, or that seven days is reasonable.  Further, although the Tenth Circuit

case Harden cites is distinguishable from this case for many reasons, it does stand

for the principle that immediate action is sometimes required of school officials.

*See Armijo by and through Chavez*, 159 F.3d at 1264.  And other courts have

found that when state actors are "on notice about . . . harassment and knew or

should have known that their nonfeasance would allow the harassment to continue

or worsen . . . their desire that it can continue can be implied." *DiSalvio v. Lower*

*Merion High School Dist.*, 158 F.Supp.2d 553, 564 (E.D. Pa. 2001); *see also John*

*G. v. Northeastern Educational Intermediate Unit 19*, 490 F. Supp. 2d 565, 585–86

(M.D. Pa. 2007).  And again, the movants fail to differentiate between each of the

two unique claims against Principal Rava.  We thus conclude that Principal Rava is

not entitled to qualified immunity at this juncture.


## V.  Conclusion.

For the foregoing reasons, we will grant in part and deny in part the pending

motion to dismiss (*doc. 8*).  We will grant the motion to dismiss insofar as it seeks

dismissal of the Title IX claims against the District, but we will grant Harden leave

to file an amended complaint on these claims on or before August 30, 2024.

Finally, we will dismiss the pending motion to dismiss (*id.*) in all other respects.

An appropriate order follows.


<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge