| | | |
|---|---|---|
| SA'RAYA HARDEN, ADMINISTRATOR OF THE ESTATE OF ADREYA HARDEN | : : : | IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA |
| Plaintiff, | : | |
| | : | CIVIL ACTION – LAW |
| v. | : | JURY TRIAL DEMANDED |
| WEST SIDE CAREER AND TECHNOLOGY CENTER, WYOMING VALLEY WEST SCHOOL DISTRICT, RICHARD RAVA in his individual capacity, and DOE(S) 1-10, | : : : : : : | No. 23-CV-01631 |
| Defendants. | : | |

---

**DEFENDANTS WEST SIDE CAREER AND TECHNOLOGY CENTER AND RICHARD RAVA'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

**KING, SPRY, HERMAN, FREUND & FAUL, LLC**
John E. Freund, Esq.
Attorney ID # 25390
Alyssa M. Hicks, Esq.
Attorney ID #325722
One West Broad Street, Suite 700
Bethlehem, Pennsylvania 18018
*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

PROCEDURAL AND FACTUAL HISTORY ..........................................1

STANDARD OF REVIEW ......................................................................2

QUESTIONS PRESENTED......................................................................4

SUMMARY OF THE ARGUMENT .......................................................5

LEGAL ARGUMENT ..............................................................................7

    I.   The record fails to establish a failure to train claim ........................7

        (a)   There is no constitutional violation committed by a state actor .........13

        (b)   Tech provided and implemented sufficient training, procedures, and policies regarding student suicide and gender non-conforming students ................................................................15

        (c)   The record fails to establish deliberate indifference ...........................18

        (d)   Plaintiff fails to establish causation between an employee's wrong choice and the deprivation of a constitutional right ...........................20

    II.   The record fails to support a violation of the Equal Protection Clause.........24

        (a)   Under the class-of-one theory, the record fails to establish that the Tech Defendants treated similarly situated students differently from Decedent ...........................................................28

        (b)   A traditional theory also fails. ...........................................29

    III.  Alternatively, the Individual Defendant is immune from all counts. ............29

CONCLUSION .....................................................................................31

# TABLE OF AUTHORITIES

**Federal Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ...........................................2, 3

Baloga v. Pittston Area Sch. Dist., 927 F.3d 742 (3d Cir. 2019) ............................30

Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397 (1997). ...........................................9

Berg v. City of Allegheny, 219 F.3d 261 (3d Cir. 2000). ...........................................8

Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d

    Cir. 1993). ........................................................................................................3

Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001).........................................8

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)........................................................2, 3

City of Canton, Ohio v. Harris, 489 U.S. 387 (1989) ...........................................8, 21

City of Los Angeles v. Heller, 475 U.S. 796 (1986). ................................................14

Connick v. Thompson, 563 U.S. 51 (2011). .............................................................9

D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364 (3d Cir.

    1992) ........................................................................................................ 19, 21

Elliott v. Pa. Interscholastic Ath. Assoc., 595 F. Supp. 3d 312 (M.D. Pa. 2022). ...20

Estate of Roman v. City of Newark, 914 F.3d 789 (3d Cir. 2019). ..........................8

Forrest v. Parry, 930 F.3d 93 (3d Cir. 2019)............................................................21

Harlow v. Fitzgerald, 457 U.S. 800 (1982)..............................................................29

Hasenfus v. LaJeunesse, 175 F.3d 68 (1st Cir. 1999). .............................................21

Hassan v. City of New York, 804 F.3d 277 (3d Cir. 2015) ......................................24

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006).....................................25

I.Z. v. City of Philadelphia, 2017 U.S. Dist. LEXIS 179105 (E.D. Pa. Oct. 30, 2017) ...............................................................................................................8

James S. ex rel. Thelma S. v. Sch. Dist. of Phila, 559 F. Supp. 2d 600 (E.D. Pa. 2008). ..............................................................................................................24

Jewish Home of E. PA v. Centers for Medicare & Medicaid Servs., 693 F.3d 359 (3d Cir. 2012)................................................................................................. 24, 25

Kline v. Mansfield, 255 Fed. Appx. 624 (3d Cir. 2007). ...........................................8

Lockhart v. Willingboro High Sch., 170 F. Supp. 3d 722 (N.J. D.C. 2015)..............9

Monell v. Dep't. of Soc. Serv., 436 U.S. 658 (1978)..................................................7

Rivera v. Sch. Dist., 2023 U.S. Dist. LEXIS 215316 (M.D. Pa. Dec. 4, 2023) ..8, 20

Sanford v. Stiles, 2004 U.S. Dist. LEXIS 22948 (E.D. Pa. Nov. 10, 2004) ...........21

Sanford v. Stiles, 456 F.3d 298 (3d Cir. 2006)........................................................22

Smith v. Snyder Cty. Prison, 2017 U.S. Dist. LEXIS 111464 (M.D. Pa. July 17, 2017 ....................................................................................... 9, 14, 19, 25

Thomas v. Cumberland County, 749 F.3d 217 (3d Cir. 2014)................................20

Washington v. Davis, 426 U.S. 229 (1976)). ...........................................................24

Wayte v. United States, 470 U.S. 598(1985)). .........................................................25

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................2

Fed. R. Civ. P. 56(c)(1)...............................................................................2

Fed. R. Civ. P. 56(e)(2)...............................................................................3

**PROCEDURAL AND FACTUAL HISTORY**

The West Side Career and Technology Center ("Tech"), Wyoming Valley West School District (the "School District"), Tech Principal Richard Rava (the "Individual Defendant" or "Mr. Rava" and together with Tech the "Tech Defendants,") file their Joint Statement of Material Facts simultaneous with their Brief in Support of their Motion to Dismiss Plaintiff's, Sa'Raya Harden ("Plaintiff"), Administrator of the Estate of Adreya Harden ("Decedent"), Complaint. The Joint Statement of Material Facts includes a Joint Appendix with relevant portions of the record, all of which can be provided upon request.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" where "it might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. If the court, viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The Federal Rules provide that "[a] party asserting that a fact cannot be or is not genuinely disputed must support the assertion by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2). Therefore, when the moving party's motion is properly supported with evidence that, if not controverted, would entitle the moving party to judgment as a matter of law, the

nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250.  The nonmoving party's mere allegations, general denials, or vague statements will not create a genuine factual dispute.   <u>See</u> <u>Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund</u>, 12 F.3d 1292, 1302 (3d Cir. 1993). Only citation to specific facts is sufficient to show a need for trial. <u>See</u> <u>Anderson</u>, 477 U.S. at 250.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[.]" <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 322

## QUESTIONS PRESENTED

**I.     WHETHER THE TECH DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR COUNT V BECAUSE THE RECORD FAILS TO ESTABLISH A FAILURE TO TRAIN CLAIM?**

Suggested Answer: Yes.

**II.    WHETHER THE TECH DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR COUNTS VII AND IX BECAUSE THE RECORD FAILS TO ESTABLISH AN EQUAL PROTECTION CLAIM?**

Suggested Answer: Yes.

**III.   WHETHER THE INDIVIDUAL DEFENDANT IS ALTERNATIVELY ENTITLED TO JUDGMENT AS A MATTER OF LAW UNDER THE DOCTRINE OF QUALIFIED IMMUNITY?**

Suggested Answer: Yes

## SUMMARY OF THE ARGUMENT

The Tech Defendants first want to recognize the tragedy before the Court. The weight of student suicide is crippling to all parties and cannot be overlooked. There are an unlimited number of factors present, known and unknown, when a person, particularly a child, decides to take their own life. Although the Tech Defendants are filled with great sympathy for Plaintiff and her family, the weight of this suicide is not theirs to bear.

The Tech Defendants are entitled to judgment as a matter of law for Count V because the record does not establish a constitutional violation committed by a state actor. If this Court finds the existence of a constitutional violation, the record shows policies, procedures, and/or training on both suicide awareness and gender non-conforming students. Notwithstanding, the failure to train argument still fails because the record does not support a pattern-of-violations or a single-violation theory, which is necessary to establish deliberate indifference. Even if either are established, there is no support for causation. Tellingly, there were many factors that likely contributed to Decedent's suicide that were unknown to the Tech Defendants.

The Tech Defendants are also entitled to judgment as a matter of law with respect to Counts VII and IX because the record does not establish that the Tech Defendants treated Decedent differently than similarly situated individuals. Instead, the record shows that during her four (4) days at school, the Tech Defendants treated

Decedent fairly and equally by honoring her requests and affording her the same opportunities as her peers.  Decedent had full access to her education during her short time at Tech.

Finally, the Individual Defendant is independently entitled to judgment as a matter of law under the doctrine of qualified immunity.  The record fails to identify a constitutional violation committed by the Individual Defendant.  Even with the same, it is evident that the Individual Defendant did not act in a manner to suggest his actions would violate Decedent's constitutional rights.

## LEGAL ARGUMENT

I.    <u>The record fails to establish a failure to train claim.</u>

The Tech Defendants are entitled to judgment as a matter of law for Count V because the record does not establish a constitutional violation committed by a state actor.  If this Court finds the existence of a constitutional violation, the record shows policies, procedures, and/or training on both suicide awareness and gender non-conforming students.   Notwithstanding, the failure to train argument still fails because the record does not support a pattern-of-violations or a single-violation theory, which is necessary to establish deliberate indifference.  Even if either are established, there is no support for causation.

To establish liability under Section 1983, Plaintiff must demonstrate (1) a constitutional violation by a state actor (2) that was caused by a municipal policy or custom.  See <u>Monell v. Dep't. of Soc. Serv.</u>, 436 U.S. 658, 691 (1978). A government entity cannot be held liable for constitutional violations solely because of the actions of its employees.  <u>Id.</u>  In <u>Monell</u>, the United States Supreme Court found that, "a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and establish 'a causal link' between the policy or custom and the constitutional injury alleged."  See <u>Monell</u>, 436 U.S. at 691.

*Failure to Train Standard*

The United States Supreme Court has recognized "limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983."

City of Canton, Ohio v. Harris, 489 U.S. 387, 389 (1989)).  "A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline 'need not allege an unconstitutional policy.'"  Rivera v. Sch. Dist., 2023 U.S. Dist. LEXIS 215316, at *63 (M.D. Pa. Dec. 4, 2023) (quoting Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)).  Rather, a plaintiff must show the school's failure to train, supervise, or discipline its employees "reflects a deliberate or conscious choice."  Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001).  "Proving that an injury could have been avoided if a school official had better or more training is not enough to show municipal liability."  Kline v. Mansfield, 255 Fed. Appx. 624, 627 (3d Cir. 2007).

*Deliberate Indifference*

"Deliberate indifference," for failure to train purposes, "can be shown through the existence of a pattern of tortious conduct by inadequately trained employees, or in some circumstances through a single instance where there is a strong likelihood that the situation will recur and that a[] [state actor] lacking specific tools to handle that situation will violate citizens' rights."  I.Z. v. City of Philadelphia, 2017 U.S. Dist. LEXIS 179105, at *7 (E.D. Pa. Oct. 30, 2017) (citing Berg v. City of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)).  It "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Smith v. Snyder Cty. Prison, 2017 U.S. Dist.

LEXIS 111464, *48-49 (M.D. Pa. July 17, 2017) (Schwab, J.) (internal quotations and citation omitted).    "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."    Connick v. Thompson, 563 U.S. 51, 62 (2011).    "In order to hold Defendants liable for such indifference to the prospect of a Fourth Amendment violation, Plaintiffs must show that sexual [ ] [harassment] was the 'plainly obvious consequence' of the District's failure."    Lockhart v. Willingboro High Sch., 170 F. Supp. 3d 722, 735 (D.N.J. 2015) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 411 (1997)).

*Facts Relevant to Failure to Train Claim*

Decedent enrolled at Tech on or around September 23, 2021.  See Statement of Material Facts ("SMF") at ¶ 63.  Right before her enrollment, she and Plaintiff met with Tech's guidance counselor, Jerry Ogurkis[1].  Id. at ¶ 73.  Plaintiff notified Mr. Ogurkis that Decedent identifies as a transgender female and goes by she/her pronouns.  Id. at ¶ 74.  Mr. Ogurkis shared with Decedent and Plaintiff that there are other transgender students (approximately twelve) at Tech and there are designated safe spaces for all students throughout the school.  Id. at ¶ 75.  Decedent's teacher,

---

[1] Mr. Ogurkis has served as Tech's guidance counsel for approximately twenty-seven (27) years.  See SMF at ¶ 80.

Thomas Pieczynski[2], also testified that there were other transgender students at Tech. Id. at ¶ 76. When Plaintiff asked about whether Tech was supportive of the LGBTQIA+ community, Mr. Ogurkis stated that Tech has a very welcoming school atmosphere with virtually no problems with students. Id. at ¶ 79. Mr. Ogurkis could tell that Decedent and Plaintiff were nervous, so he gave them a tour of the building and answered questions to alleviate concerns. Id. at ¶ 81.

Plaintiff and Decedent asked Mr. Ogurkis questions about documenting a student's chosen name, and he explained how that is honored. Id. at ¶ 82. Tech enters a student's preferred name into its system next to their legal name, which is accessible to all Tech teachers. Id. at ¶ 83. Tech Principal Richard Rava and teacher Mr. Pieczynski also confirmed that Tech honors students' preferred names. Id. at ¶ 84. Plaintiff testified that after the meeting she felt that Decedent would not fit in because she would be the only transgender student – although this was not the case – and that the cosmetology program was full[3]. Id. at ¶ 85.

Plaintiff was familiar with Mr. Pieczynski because they grew up together. Id. at ¶ 89. Because Decedent was ineligible for cosmetology, Decedent enrolled in the food marketing program, which was taught by Mr. Pieczynski. Id. at ¶ 90. Plaintiff

---

[2] Mr. Pieczynski has served as a Tech teacher for approximately eighteen (18) years. See SMF at ¶ 78.
[3] Although this is likely the case, Decedent also could not enroll in the cosmetology program at that time because of an age/grade restriction. See SMF at ¶ 86-8. The cosmetology program started tenth grade. Id.

knows that Mr. Pieczynski also has a child who identifies as transgender. Id. at ¶ 92. Mr. Pieczynski told Plaintiff that all students at Tech are treated equally and have a fair opportunity to succeed. Id. at ¶ 93. Plaintiff never met nor spoke to Tech Principal, Richard Rava. Id. at ¶ 94. Mr. Rava did not know that Decedent was transgender until he received the discipline referral. Id. at ¶ 95.

From the time of Decedent's enrollment until her death, she only attended four of eight school days[4]. Id. at ¶ 96. During that time, Decedent did not report any issues with her classes, her teachers, or other students. Id. at ¶ 97. Specifically, Decedent did not report any issues with her teachers or other students harassing her or referring to her as her "dead name." Id. at ¶ 98. Decedent never shared any issues with Mr. Ogurkis and the only issue he was aware of was the single incident with the offending student. Id. at ¶ 99. Plaintiff never reported any concerns to Tech. Id. at ¶ 108.

Plaintiff produced a note from a student claiming she overheard a teacher refer to Decedent by her "dead name." Id. at ¶ 100. Plaintiff produced an email from another student who knew Decedent from elementary school but did not recognize her when they were at Tech together. Id. at ¶ 101. This student only talked to Decedent once while at Tech and implied that she did not know Decedent very well.

---

[4] Student was present on September 23, 27, 29, and 30. Student was absent September 24, 28, October 1, and 4. She was found unresponsive on October 5.

Id. at ¶ 102.  This student made various allegations about Tech that occurred after Decedent's suicide.  Id. at ¶ 102.  This student also recounts the incident cited to below although she was not in this class.  Id. at ¶ 104.  Finally, this student claims she knew that teachers would not call Decedent her preferred name without insight as to how she knew since the same did not occur in their sole class together and this student only spoke to Decedent once.  Id. at ¶ 105.  If anything, these students statements are evidence of the school's rumor mill, which did not make its way to Tech.

Other than a single isolated incident referenced below, no teacher reported issues to Tech administration that students or other teachers were harassing Decedent[5].  Id. at ¶ 106.  There is a single incident wherein Decedent was the subject of sex-based harassment carried out by another student (the "offending student").  Id. at ¶ 109.  On September 29, 2021, another student verbally harassed Decedent during Mr. Pierzynski's class.  Id. at ¶ 110.  Mr. Pieczynski testified that he first observed Decedent and the offending student talking in what appeared to be a flirtatious matter.  Id. at ¶ 111.  Later on, the conversation took a turn and Mr. Pieczynski observed Decedent and the offending student yelling at each other.  Id. at ¶ 112.  The offending student also referred to Decedent as her "dead name."  Id.

---

[5] Despite Plaintiff alleging that Mr. Pieczynski emailed Mr. Rava approximately three (3) times, stating Decedent was being bullied and harassed about her sex, that has been proven to be false. See J.A. Exhibit H at p. 17:8-13.

at ¶ 113.  Mr. Pieczynski asked the offending student to leave the class and reported this incident to Tech administration that day.  Id. at ¶ 114.  Mr. Pieczynski did not witness any other student harass Decedent on the basis of sex.  Id. at ¶ 115.  Mr. Pieczynski only reported the single incident he witnessed.  Id. at ¶ 116.

Mr. Rava received this report and immediately took action.  Id. at ¶ 117. He spoke with the offending student that same day.  Id. at ¶ 118.  Through his investigation, Mr. Rava learned that this was an isolated incident.  Id. at ¶ 119.  That same day, Mr. Rava issued discipline to the offending student to begin the next day, September 30, 2021.  Id. at ¶ 120.  The record indicates that Decedent and the offending student did not interact after September 29, 2021.  Id. at ¶ 125.  The offending student received a three (3) day in-school suspension.  Id. at ¶ 122. Decedent only attended school the day after this incident and then never returned. Id. at ¶ 123.

The Tech Defendants are entitled to judgment as a matter of law because the record fails to substantiate the following: (a) a constitutional violation committed by a state actor; (a) a lack of policies, training, and procedures addressing gender non-conforming students and suicide awareness;  (c) a pattern-of-violation or a single-violation of students' rights; and (d) causation between a violative act and harm.

**(a)    There is no constitutional violation committed by a state actor.**

In the absence of an underlying constitutional violation, a <u>Monell</u> claim fails as a matter of law.  <u>See</u> <u>Smith</u>, 2017 U.S. Dist. LEXIS 111464 at *50 (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)).  There is nothing in the record to support Plaintiff's claims that a state actor violated Decedent's constitutional rights.  As stated, Decedent spent a total of four (4) days at Tech.  There is no evidence to support that a state actor refused to address sex-based student-on-student harassment.  The record establishes the opposite.  During that time, there is only one reported incident of sex-based harassment carried out by another student.  Tech responded swiftly and appropriately.  It is believed that Decedent and the offending student did not interact again after that single incident.  Neither Decedent nor Plaintiff reported any other issues.  Tech accommodated Decedent throughout her time at Tech and took steps to make sure she felt comfortable.

Moreover, Decedent was not excluded from the participation in, denied the benefits of, or subjected to discrimination under any education program.  The record supports Decedent had full access to her programming at Tech during her short time there.  The only specific incident referenced by Plaintiff is that Decedent was excluded from the cosmetology department on the basis of sex.  The record refutes this allegation.  There are two student statements wherein they claim teachers called Decedent by her dead name, which incorporate minimal to no corroboration.  If true, the record shows this was not known to Tech.

Because there is no constitutional violation committed by a state actor, the Tech Defendants are entitled to judgment as a matter of law. In the event this Court disagrees, the failure to train argument still fails because Tech did train its employees, or alternatively, the record fails to establish a pattern-of-violation or a single-violation theory required for a failure to train claim.

**(b)   Tech provided and implemented sufficient training, procedures, and policies regarding student suicide and gender non-conforming students.**

Tech's Policy 103 is titled "Discrimination/Title IX Sexual Harassment Affecting Students," and it was adopted on March 25, 2019. See SMJ at ¶ 134. Policy 103 dictates that "sexual harassment" means "conduct on the basis of sex that satisfies one or more of the following," in relevant part, "unwelcome conduct determined by a reasonable person to be so severe, pervasive and objectively offensive that it denies a person equal access to a [Tech] education program or activity." Id. at ¶ 135. Policy 103 dictates that in the event there is harassment that falls under this policy, the building administer must be contacted and that person shall promptly notify the Title IX coordinator. Id. at ¶ 136. Although the above referenced incident between Decedent and the offending student meets the definition of sex-based harassment, Mr. Rava handled the matter as a bullying-like activity. Id. at ¶ 137. Moreover, it was an isolated incident that did not deny Decedent access to a Tech program or activity. Id. at ¶ 138. Decedent was in school the next day while

the offending student served his punishment.  Id. at ¶ 139.  Decedent did not come

back after that.  Id. at ¶ 140.  Thus, Mr. Rava's discretion in handling the incident

the way he did does not amount to a constitutional violation.

Policy 249 is titled "Bullying/Cyberbullying," and it was adopted on March

25, 2019, last revised August 23, 2021.  Id. at ¶ 143.  This policy does state that

"Every report of alleged bullying that can be interpreted at the outset to fall within

the provisions of policies addressing potential violations of law against

discrimination and discriminatory harassment shall be handled as a joint, concurrent

investigation into all of the allegations and coordinated with the participation of the

compliance officer and the Title IX coordinator."  Id. at ¶ 144.  The Title IX

compliance officer is Dr. Thomas Duffy.  Id. at ¶ 145.  Dr. Duffy did learn about the

incident via email on October 7, 2021 – two (2) days after Decedent's death.  Id. at

¶ 146.  Regardless of this fact, less than a week elapsed between the incident and

Decedent's death.  Id. at ¶ 147.  Day one of the suspension occurred on a Thursday

(September 30), day two a Friday (October 1), and day three a Monday (October 4).

Id. at ¶ 148.  During that timeframe, Decedent and the offending student did not

interact again.  Id. at ¶ 149.  Decedent was found dead on October 5.  Id. at ¶ 150.

Any type of Title IX investigation would only just be beginning, and quite frankly,

Tech still was within reason to start the commencement of the same if it did so a

week later.

Tech did not enact an official Joint Operating Committee policy regarding suicide awareness prevention and response until March 28, 2022.  Id. at ¶ 151. Regardless, Tech had other procedures in place regarding suicide awareness and trained its employees on the same.  Id. at ¶ 152.  For example, during the 2019-2020 school year, a training occurred on February 28, 2020, which addressed youth suicide, awareness, prevention training as well as school violence.  Id. at ¶ 153. During the 2020-2021 school year, there was an in-service on March 12, 2021, which again addressed youth suicide, awareness, and prevention training.  Id. at ¶ 154. Tech's guidance counselor, Mr. Ogurkis, functions as a Suicide Prevention Coordinator.  Id. at ¶ 155.  Mr. Ogurkis confirmed he received training regarding suicide awareness.  Id. at ¶ 156.  Mr. Pieczynski also confirmed he received training regarding suicide awareness.  Id. at ¶ 157.

Tech also provided training on other relevant topics: mindfulness training equity training, social and emotional learning, and diversity training.  Id. at ¶ 158. Tech students also receive education on suicide awareness and prevention in health class.  Id. at ¶ 159.  There are requirements for training newly hired faculty such as at-risk and observable behaviors, which relate to student suicide and prevention.  Id. at ¶ 160.  Tech also has the Student Assistance Program ("SAP"), which involves not only a formal referral process but also a consultation element where if a teacher observed at-risk behaviors they are trained to refer the same to the SAP.  Id. at ¶ 161.

The SAP team includes Tech's guidance counselor, trained teachers, the school nurse, and the school principal. Id. at ¶ 162. SAP referrals can come from students, parents, teachers, counselors, administrators, etc. Id. at ¶ 163. The function of and resources related to the SAP are included in the Student Handbook. Id. at ¶ 164.

The SAP is also a Joint Operating Committee policy – Policy 236 "Student Assistance Program" – which was adopted on May 23, 2019. Id. at ¶ 165. The Student Handbook is approved by the Joint Operating Committee. Id. at ¶ 166. Through this, Tech staff were trained and expected to notice the warning signs for students who appear to be at risk. Id. at ¶ 167. Mr. Ogurkis confirmed that the SAP includes referrals for students at-risk for suicide. Id. at ¶ 168. Tech also has internal practices regarding transgender students such as honoring their preferred names and pronouns, which has been corroborated by Tech staff and administration. Id. at ¶ 169.

Based on the same, it is evident that Tech employs comprehensive policies, training, and procedures, and therefore, is entitled to summary judgment. Regardless, Plaintiff cannot meet the deliberate indifference standard.

**(c)    The record fails to establish deliberate indifference.**

The Tech Defendants continue to be entitled to judgment as a matter of law because the record fails to establish a pattern of constitutional violations or that the Tech Defendants were deliberately indifferent toward a foreseeable violation of a

constitutional right.  First, there is no dispute of material fact that the record fails to establish a history of a pattern of sex or sex-based harassment against students at Tech.  There are two student statements that claim teachers did not honor Decedent and other students preferred names but the same comes from the rumor mill and importantly, were not known to Tech.  There is no evidence of other incidents of sex-based harassment or a failure to respond to the same.  Instead, the record reflects procedures in place on how to protect transgender students.  Tech has welcomed over a dozen transgender students to participate in its programs.  The fact that there is no evidence of a pattern of this type of harassment supports Tech's assertion that its training, policies, and procedures are sufficient.

Second, the record also fails to identify a single incident showing that "the need to train . . . is 'so obvious' that the failure to do so would predictably lead to recurrent violations of constitutional rights." Smith, 2017 U.S. Dist. LEXIS 111464 at *49 (quoting City of Canton, 489 U.S. at 390).  The only cited incident is the sex-based harassment between Decedent and another student.  Tech administration and staff testified that there were no other known issues during Decedent's time at Tech. Public entities cannot control the actions of third parties, but they can ensure its agents respond appropriately when those parties commit violative acts.  See D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1378 (3d Cir. 1992)

(stating "the Third Circuit has held that school officials do not have a constitutional obligation to intervene to protect students from being abused by their peers").

The record fails to identify an employee making a decision that resulted in a constitutional injury. Instead, the record shows that all Tech staff and administration not only responded appropriately to this incident but they also followed Tech's procedures when welcoming and educating a gender non-conforming student. The same can be attributed to appropriate training. Notwithstanding, there is no causation between deficient training and the alleged harm.

### (d) Plaintiff fails to establish causation between an employee's wrong choice and the deprivation of a constitutional right.

"In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of training . . . must also allege causation." Rivera, at *65 (citing Elliott v. Pa. Interscholastic Ath. Assoc., 595 F. Supp. 3d 312 (M.D. Pa. 2022)). "The causation inquiry focuses on whether the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect." Thomas v. Cumberland County, 749 F.3d 217, 226 (3d Cir. 2014). "The alleged deficiency in a training program must be closely related to the alleged constitutional injury because '[i]n virtually every instance where a person has had his or her constitutional rights violated by a [municipality], said plaintiff will be able to point to something the [municipality]

"could have done" to prevent the unfortunate incident.'" <u>Forrest v. Parry</u>, 930 F.3d 93, 109 (3d Cir. 2019) (quoting <u>Harris</u>, 489 U.S. at 392)).

Plaintiff's causation argument appears to be that but for the alleged failure to train Tech employees, Decedent would not have committed suicide. This argument on its face fails because there is no constitutional violation committed by a state actor. Even if this Court accepts the two erratic student statements, these allegations were unknown to Tech. This argument also fails based on policy.

In <u>Sanford v. Stiles</u>, the Eastern District contemplated a student suicide as it related to a state created danger theory, but jurisprudence cited therein is relevant here:

> [S]uicide by school-age children is no slight matter; but it has no single cause and no infallible salutation . . . Absent a showing that the school affirmatively caused a suicide, the primary responsibility for safeguarding children from danger, as from most others, is that of their parents; even they, with direct control and intimate knowledge are often helpless.

<u>Sanford v. Stiles</u>, 2004 U.S. Dist. LEXIS 22948, at *30 (E.D. Pa. Nov. 10, 2004) (affirmed by 456 F.3d 298 (3d Cir. 2006)) (quoting Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)). The Third Circuit also makes it clear that there is no special relationship between a student and school entities as to imply an affirmative constitutional duty to protect from all potential harm. <u>See</u> <u>D.R.</u>, 972 at F.2d 1372. Above all, parents maintain the power to protect their children. <u>Id.</u> at 1371.

The plaintiff in Sanford relied on that district's Suicide Referral Process and argued the intervention related to the same was insufficient. Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006). When the Third Circuit affirmed, it found that the plaintiff failed to show that any school action could be causally related to the child's suicide. Id. Moreover, the lower court in Sanford found "no evidence of a pattern of student suicides in the district," or evidence that the student suicide procedures failed in the past. Id. Despite the different theory employed here, the argument is applicable.

Importantly, in Sanford, a student reported that the decedent made a suicidal comment and the guidance counselor did a threat assessment. Id. at 301-302. After a subsequent guidance visit, the decedent committed suicide at home that evening. Id. Here the record shows a history of inconsistently treated mental illnesses that was unknown to the Tech Defendants and the School District. The records shows Decedent displayed issues with behavior as early as four years old. See SMF at ¶ 170. She was diagnosed with bipolar disorder at ten (10) years old and, at some point, depression and anxiety. Id. at ¶¶ 175-76. There are earlier reports of suicidal ideations that Plaintiff never reported to the Tech Defendants or the School District. Id. at ¶¶ 178, 181, 179, 194.

The record also shows various traumatic events including the death of Decedent's grandfather and father (who was alleged to be murdered by his own

father) as well as a sexual assault around nine (9) years old.  Id. at ¶¶ 197-201.

Plaintiff unilaterally weened Decedent off her bipolar and/or depression medication

at least twice.  Id. at ¶¶ 189, 203.  Plaintiff consistently reported to healthcare

providers that Decedent's behavioral issues/mood swings increased when she did

not take her medication.  Id. at ¶ 183, 206.  This mental health history was neither

reported to the School District nor Tech.  Id. at ¶ 179.

At the time of her death, Decedent was not consistently taking her medication,

if at all.  Id. at ¶ 207.  The days leading up to Decedent's death, she did not tell

Plaintiff there were any issues.  Id. at ¶ 208.  Decedent did tell Plaintiff she made a

friend and that she was happy.  Id. at ¶ 209.  The weekend prior to her death,

Decedent had a respiratory infection and she did not go to school the following

Monday.  Id. at ¶ 210.  The last time Plaintiff spoke to Decedent was the night before

she died.  Id. at ¶ 211.  The next day, Decedent was found unresponsive in her bed

by Plaintiff's boyfriend at the time.  Id. at ¶ 212.  She died of an overdose of her own

medication.  Id. at ¶ 214.

The record identifies a variety of factors that could have contributed to

Decedent's death, but none of them can be attributed to the Tech Defendants.

Because the record fails to support (a) a constitutional violation committed by a state

actor, (b) a lack of policies, training, and procedures addressing gender non-

conforming students and suicide awareness,  (c) a pattern-of-violation or a single-

violation of students' rights, and (d) causation between a violative act and harm, Plaintiff's claims are legally insufficient. Therefore, the Tech Defendants are entitled to summary judgment as to Count V.

II.    The record fails to support a violation of the Equal Protection Clause.

The Tech Defendants are entitled to judgment as a matter of law with respect to Counts VII and IX because the record does not establish that the Tech Defendants treated Decedent differently than similarly situated individuals. Instead, the record shows that the Tech Defendants treated Decedent fairly and equally by honoring her requests and affording her the same opportunities as her peers.

To sufficiently plead a Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that he or she "received different treatment from other similarly situated individuals or groups." James S. ex rel. Thelma S. v. Sch. Dist. of Phila, 559 F. Supp. 2d 600, 623 (E.D. Pa. 2008). "To state an equal-protection claim, Plaintiffs must allege (and ultimately prove) 'intentional discrimination.'" Hassan v. City of New York, 804 F.3d 277, 294 (3d Cir. 2015) (quoting Washington v. Davis, 426 U.S. 229, 241 (1976)). "[M]ere unequal treatment or adverse effect" is not sufficient. Jewish Home of E. PA v. Centers for Medicare & Medicaid Servs., 693 F.3d 359 (3d Cir. 2012). Rather, the plaintiff "must show that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite

of, its adverse effects.'"  Id. (quoting Wayte v. United States, 470 U.S. 598, 610 (1985)).

Plaintiff's Equal Protection Claim alleges that because Decedent was a transgender female and did not conform to male sex-stereotypes, she was treated differently from similarly situated students.  See ECF # 1 at ¶ 228.  In the event this claim is brought under the "class of one" theory, a plaintiff must show that (1) the public entity treated the plaintiff differently than others similarly situated; (2) the entity did so intentionally; and (3) there was no rational basis for the difference.  See Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  Under the traditional theory, a plaintiff must demonstrate "(1) he or she is a member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently."  Smith, 2017 U.S. Dist. LEXIS 111464 at *50.

*Facts Relevant to Equal Protection Claim*

Decedent enrolled at Tech on or around September 23, 2021.  See SMF at ¶ 63.  Right before her enrollment, she and Plaintiff met with Tech's guidance counselor, Jerry Ogurkis.  Id. at ¶ 73.  Plaintiff notified Mr. Ogurkis that Decedent identifies as a transgender female and goes by she/her pronouns.  Id. at ¶ 74.  Mr. Ogurkis shared with Decedent and Plaintiff that there are other transgender students (approximately twelve) at Tech and there are designated safe spaces throughout the

school.  Id. at ¶ 75.  Decedent's teacher, Thomas Pieczynski[6], also testified that there were other transgender students at Tech.  Id. at ¶ 76.  When Plaintiff asked about whether Tech was supportive of the LGBTQIA+ community, Mr. Ogurkis stated that Tech has a very welcoming school atmosphere with virtually no problems with students.  Id. at ¶ 79.  Mr. Ogurkis could tell that Decedent and Plaintiff were nervous, so he gave them a tour of the building and answered questions to alleviate concerns.  Id. at ¶ 81.

Plaintiff and Decedent asked Mr. Ogurkis questions about documenting a student's chosen name, and he explained how that is honored.  Id. at ¶ 82.  Tech enters a student's preferred name into its system next to their legal name, which is accessible to all Tech teachers.  Id. at ¶ 83.  Tech Principal Richard Rava and teacher Mr. Pieczynski also confirmed that Tech honors students' preferred names.  Id. at ¶ 84.  Plaintiff testified that after the meeting she felt that Decedent would not fit in because she would be the only transgender student – although this was not the case – and that the cosmetology program was full[7].  Id. at ¶ 85.

During the four (4) days Decedent attended school in person, she did not report any issues with her classes, her teachers, or other students.  Id. at ¶ 97.

---

[6] Mr. Pieczynski has served as a Tech teacher for approximately eighteen (18) years.  See SMF at ¶ 78.
[7] Although this is likely the case, Decedent could not enroll in the cosmetology program at that time because of an age/grade restriction.  See SMF at ¶ 86-8.

Specifically, Decedent did not report any issues with her teachers or other students harassing her or referring to her as her "dead name." Id. at ¶ 98. Decedent never shared any issues with Mr. Ogurkis and the only issue he was aware of was the single incident with the offending student. Id. at ¶ 99. Plaintiff never reported any concerns to Tech. Id. at ¶ 108. There were no behavioral concerns/discipline regarding Decedent during her short time at Tech. Id. at ¶ 107.

There is a single incident wherein Decedent was the subject of sex-based harassment carried out by another student as described above. Id. at ¶ 109. Mr. Pieczynski witnessed this altercation and reported it to Tech administration. Id. at ¶ 110-113. Mr. Rava received this report and immediately took action. Id. at ¶ 117. Through his investigation, Mr. Rava learned that this was an isolated incident. Id. at ¶ 119. That same day, Mr. Rava issued discipline to the offending student to begin the next day, September 30, 2021. Id. at ¶ 120. The record indicates that Decedent and the offending student did not interact after September 29, 2021. Id. at ¶ 125. The offending student received a three (3) day in-school suspension. Id. at ¶ 122. Decedent only attended school the day after this incident and then never returned. Id. at ¶ 123.

Plaintiff's equal protection claim fails under both the class-of-one and traditional theories because the record fails to show that Decedent was treated differently than similarly situated individuals. Alternatively, there is no evidence to

support intentional discrimination. Thus, the Tech Defendants are entitled to judgment as a matter of law for Counts VII and IX.

> **(a)** **Under the class-of-one theory, the record fails to establish that the Tech Defendants treated similarly situated students differently from Decedent.**

Decedent was afforded the same opportunities and accommodations as all Tech students. The Tech Defendants noted and honored her preferred name. Neither Decedent nor Plaintiff notified Tech that students or Tech staff were not honoring her preferred name or otherwise harassing her on the basis of sex. The single incident of sex-based harassment carried out by a student was noted by a Tech teacher. The offending student was disciplined. Decedent was not disciplined for that incident or for anything else during her time at Tech. There was no other reported harassment. There is nothing in the record to support that Tech "blamed" her for the single incident of harassment. Instead, the record shows that Tech took a reported incident of sex-based harassment very seriously with its immediate response. Notwithstanding, there is nothing in the record to support intentional discrimination by a state actor. All testimony provided by Tech employees shows that Decedent's preferred name and pronouns were honored and that she was treated equally. Without a specific situation showing Decedent was treated differently than similarly situated students, all theories under the Equal Protection Clause fail.

**(b)    A traditional theory also fails.**

In the event Counts VII and IX are brought under a traditional, or protected class, theory, there is a question as to whether Decedent's transgender status amounts to a protected class under the Equal Protection Clause.  See Smith, 2017 U.S. Dist. LEXIS 111464 at *47.  But because the record fails to show that Decedent was treated differently from other similarly situated individuals, this claim would fail regardless of the theory.  Therefore, Plaintiff fails to substantiate an equal protection claim and the Tech Defendants are entitled to summary judgment for Counts VII and IX.

III.    Alternatively, the Individual Defendant is immune from all counts.

Government officials are entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known."[8]  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To impose liability, the plaintiff must prove the following: (1) the violation of a constitutional right; (2) the right was clearly established at the time of the alleged violation; and (3) the unconstitutional nature of the action is apparent to a objectively reasonable observer.  Id. at 818-89.  "For a right to be clearly established, there must be sufficient precedent at the time of the action, factually

---

[8] As of 2021, there is room to argue statutory or constitutional rights specific to transgender students were not clearly established to the degree that a reasonable person would have known.

similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." <u>Baloga v. Pittston Area Sch. Dist.</u>, 927 F.3d 742, 762 (3d Cir. 2019) (internal quotations and citation omitted).

The record fails to show that the Individual Defendant violated Decedent's constitutional rights.  The Individual Defendant did not know Decedent prior to the above-referenced discipline referral.  <u>See</u> SMF at ¶ 95.  He did not know that she was transgender until that referral.  <u>Id.</u>  It is important to reiterate that Decedent was in person at Tech for four (4) school days.  <u>Id.</u> at ¶ 96.  There were no behavioral concerns/discipline regarding Decedent during her short time at Tech.  <u>Id.</u> at 107.  Other than the one incident, no teacher reported concerns regarding Decedent to the Individual Defendant.  <u>Id.</u> at ¶ 106.  Plaintiff also never reported any concerns.  <u>Id.</u> at ¶ 108.  The Individual Defendant processed the referral like he would any other by conducting an investigation and issuing discipline.  <u>Id.</u> at ¶ 117-120.  He treated the incident as a bullying-like activity.  <u>Id.</u> at ¶ 137.  Decedent and the offending student did not interact after that day.  <u>Id.</u> at ¶ 125.  Decedent only attended school the day after this incident and then never returned.  <u>Id.</u> at 123.

It cannot reasonably follow that the aforesaid amounts to a constitutional violation, or alternatively, that the Individual Defendant's actions were objectively unconstitutional in nature.  Moreover, for an equal protection claim, a plaintiff must prove intentional discrimination, and the record does not support the same.

Therefore, in the event Counts V, VII, and IX are not dismissed for the reasons stated herein, the Individual Defendant is separately entitled to judgment as a matter of law under the doctrine of qualified immunity.

## CONCLUSION

Based on the foregoing, both the West Side Career and Technology Center and Richard Rava are entitled to judgment as a matter of law. Their Motion for Summary Judgment should be granted in its entirety and Plaintiff's case dismissed.

Respectfully submitted,

KING, SPRY, HERMAN, FREUND & FAUL, LLC

Dated: <u>December 16, 2024</u>

By: <u>*/s/ Alyssa M. Hicks*</u>
John E. Freund, III, Esq.
Attorney I.D. No. 25390
Alyssa M. Hicks, Esq.
Attorney I.D. No, 325722
One West Broad Street, Suite 700
Bethlehem, Pennsylvania 18010
(610) 332-0390
*Attorneys for West Side Career and Technology Center, Wyoming Valley West School District, and Richard Rava*

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned counsel hereby certifies that according to Microsoft Word's word count feature, this Brief contains approximately 7,100 words.

Respectfully submitted,

*/s/Alyssa M. Hicks*
Alyssa M. Hicks, Esq.
Attorney ID # 325722

Date: <u>December 16, 2024</u>

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney for Defendants hereby certifies that a true and correct copy of the foregoing document has been electronically filed and is available for viewing and downloading from the ECF system in accordance with the local Federal Rules of Civil Procedure and has been served electronically upon the following counsel of record on this day addressed as follows:

Nathaniel L. Foote
nate@vca.law
Ryan Dickinson
ryan@vca.law
Andreozzi & Foote
4503 North Front Street
Harrisburg, PA 17110

DATE: <u>December 16, 2024</u>          By: <u>*/s/ Alyssa M. Hicks*</u>
                                              Alyssa M. Hicks, Esquire

{01392566}