| | | |
|---|---|---|
| SA'RAYA HARDEN, | : | IN THE UNITED STATES DISTRICT |
| ADMINISTRATOR OF THE | : | COURT FOR THE MIDDLE |
| ESTATE OF ADREYA HARDEN | : | DISTRICT OF PENNSYLVANIA |
| Plaintiff, | : | |
| | : | CIVIL ACTION – LAW |
| v. | : | JURY TRIAL DEMANDED |
| WEST SIDE CAREER AND | : | |
| TECHNOLOGY CENTER, | : | No. 3:23-CV-01631 |
| WYOMING VALLEY WEST | : | |
| SCHOOL DISTRICT, RICHARD | : | |
| RAVA in his individual capacity, | : | |
| and DOE(S) 1-10, | : | |
| Defendants. | : | |

---

## DEFENDANT WYOMING VALLEY WEST SCHOOL DISTRICT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

**KING, SPRY, HERMAN, FREUND & FAUL, LLC**
John E. Freund, Esq.
Attorney ID # 25390
Alyssa M. Hicks, Esq.
Attorney ID #325722
ahicks@kingspry.com
One West Broad Street, Suite 700
Bethlehem, Pennsylvania 18018
*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PROCEDURAL AND FACTUAL HISTORY ......................................................5

STANDARD OF REVIEW ................................................................................6

QUESTIONS PRESENTED ..............................................................................8

SUMMARY OF THE ARGUMENT ..................................................................9

LEGAL ARGUMENT ....................................................................................11

   I.   The record fails to establish a failure to train claim ......................................11

      (a)   There is no constitutional violation committed by a state actor .........17

      (b)   The School District provided and implemented sufficient training, procedures, and policies regarding student suicide and gender non-conforming students ................................................................................19

      (c)   The record fails to establish deliberate indifference ...........................20

      (d)   Plaintiff fails to establish causation between an employee's wrong choice and the deprivation of a constitutional right ............................21

   II.   The record fails to support a violation of the Equal Protection Clause .........25

      (a)   Under the class-of-one theory, the record fails to establish that the School District treated similarly situated students differently from Decedent ..........................................................................................27

      (b)   A traditional theory also fails. .........................................................28

CONCLUSION .............................................................................................28

# TABLE OF AUTHORITIES

## Federal Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ...........................................6, 7

Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397 (1997). ..........................................13

Berg v. City of Allegheny, 219 F.3d 261 (3d Cir. 2000)..........................................12

Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d
    Cir. 1993). ........................................................................................................7

Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001).......................................12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)......................................................6, 7

City of Canton, Ohio v. Harris, 489 U.S. 387 (1989) ...................................... 12, 22

City of Los Angeles v. Heller, 475 U.S. 796 (1986)). ..............................................18

Connick v. Thompson, 563 U.S. 51 (2011). ............................................................13

Elliott v. Pa. Interscholastic Ath. Assoc., 595 F. Supp. 3d 312 (M.D. Pa. 2022). ...21

Estate of Roman v. City of Newark, 914 F.3d 789 (3d Cir. 2019). .........................12

Forrest v. Parry, 930 F.3d 93 (3d Cir. 2019) ..........................................................22

Hasenfus v. LaJeunesse, 175 F.3d 68 (1st Cir. 1999). .............................................22

Hassan v. City of New York, 804 F.3d 277 (3d Cir. 2015) ......................................25

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006).....................................26

I.Z. v. City of Philadelphia, 2017 U.S. Dist. LEXIS 179105 (E.D. Pa. Oct. 30,
    2017) ...............................................................................................................12

James S. ex rel. Thelma S. v. Sch. Dist. of Phila, 559 F. Supp. 2d 600 (E.D. Pa. 2008). ...........................................................................................................25

Jewish Home of E. PA v. Centers for Medicare & Medicaid Servs., 693 F.3d 359 (3d Cir. 2012).........................................................................................26

Kline v. Mansfield, 255 Fed. Appx. 624 (3d Cir. 2007). .........................................12

Lockhart v. Willingboro High Sch., 170 F. Supp. 3d 722 (N.J. D.C. 2015)............13

Monell v. Dep't. of Soc. Serv., 436 U.S. 658 (1978)................................................11

Rivera v. Sch. Dist., 2023 U.S. Dist. LEXIS 215316 (M.D. Pa. Dec. 4, 2023) 12, 21

Sanford v. Stiles, 2004 U.S. Dist. LEXIS 22948 (E.D. Pa. Nov. 10, 2004) ............22

Sanford v. Stiles, 456 F.3d 298 (3d Cir. 2006).........................................................23

Smith v. Snyder Cty. Prison, 2017 U.S. Dist. LEXIS 111464 (M.D. Pa. July 17, 2017 ....................................................................................... 13, 18, 20, 26

Thomas v. Cumberland County, 749 F.3d 217 (3d Cir. 2014)................................21

Washington v. Davis, 426 U.S. 229 (1976)). ...........................................................25

Wayte v. United States, 470 U.S. 598(1985)). .........................................................26

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................2

Fed. R. Civ. P. 56(c)(1)..............................................................................................2

Fed. R. Civ. P. 56(e)(2)..............................................................................................3

**PROCEDURAL AND FACTUAL HISTORY**

The West Side Career and Technology Center ("Tech"), Wyoming Valley West School District (the "School District"), and Tech Principal Richard Rava file their Joint Statement of Material Facts simultaneous with their Brief in Support of their Motion to Dismiss Plaintiff's, Sa'Raya Harden ("Plaintiff"), Administrator of the Estate of Adreya Harden ("Decedent"), Complaint.  The Joint Statement of Material Facts includes a Joint Appendix with relevant portions of the record, all of which can be provided upon request.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" where "it might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. If the court, viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The Federal Rules provide that "[a] party asserting that a fact cannot be or is not genuinely disputed must support the assertion by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Therefore, when the moving party's motion is properly supported with evidence that, if not controverted, would entitle the moving party to judgment as a matter of

law, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.  The nonmoving party's mere allegations, general denials, or vague statements will not create a genuine factual dispute.  See Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1302 (3d Cir. 1993).  Only citation to specific facts is sufficient to show a need for trial. See Anderson, 477 U.S. at 250.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[.]" See Celotex Corp., 477 U.S. at 322

## QUESTIONS PRESENTED

I.    **WHETHER THE SCHOOL DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR COUNT VI BECAUSE THE RECORD FAILS TO ESTABLISH A FAILURE TO TRAIN CLAIM?**

Suggested Answer: Yes.

II.   **WHETHER THE SCHOOL DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR COUNT VIII BECAUSE THE RECORD FAILS TO ESTABLISH AN EQUAL PROTECTION CLAIM?**

Suggested Answer: Yes.

## SUMMARY OF THE ARGUMENT

The School District first wants to recognize the tragedy before the Court. The weight of student suicide is crippling to all parties and cannot be overlooked. There are an unlimited number of factors present, known and unknown, when a person, particularly a child, decides to take their own life. Although the School District is filled with great sympathy for Plaintiff and her family, the weight of this suicide is not its to bear.

The School District is entitled to judgment as a matter of law for Count VI because the record does not establish a constitutional violation committed by a state actor. If this Court finds the existence of a constitutional violation, the record shows policies, procedures, and/or training on both suicide awareness and gender non-conforming students. Notwithstanding, the failure to train argument still fails because the record does not support a pattern-of-violations or a single-violation theory, which is necessary to establish deliberate indifference. Even if either are established, there is no support for causation. Tellingly, there were many factors that likely contributed to Decedent's suicide that were unknown to the School District.

The School District is also entitled to judgment as a matter of law with respect to Count VIII because the record does not establish the School District treated Decedent differently than similarly situated individuals. Instead, the record

shows Decedent had not been present in school for almost two and half years.  The record also shows that during that time, she did not interact with other students or teachers (but for the one who provided her instruction virtually or outside of school).  Finally, the record shows that once the School District knew Decedent identified as transgender, it accommodated, or offered accommodations, to ensure she could access her education.

## LEGAL ARGUMENT

I.    <u>The record fails to establish a failure to train claim.</u>

The School District is entitled to judgment as a matter of law for Count VI because the record does not establish a constitutional violation committed by a state actor.  If this Court finds the existence of a constitutional violation, the record shows policies, procedures, and/or training on both suicide awareness and gender non-conforming students.  Notwithstanding, the failure to train argument still fails because the record does not support a pattern-of-violations or a single-violation theory, which is necessary to establish deliberate indifference.  Even if either are established, there is no support for causation.

To establish liability under Section 1983, Plaintiff must demonstrate (1) a constitutional violation by a state actor (2) that was caused by a municipal policy or custom.  <u>See</u> <u>Monell v. Dep't. of Soc. Serv.</u>, 436 U.S. 658, 691 (1978). A government entity cannot be held liable for constitutional violations solely because of the actions of its employees.  <u>Id</u>.  In <u>Monell</u>, the United States Supreme Court found that, "a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and establish 'a causal link' between the policy or custom and the constitutional injury alleged."  <u>See</u> <u>Monell</u>, 436 U.S. at 691.

*Failure to Train Standard*

The United States Supreme Court has recognized "limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983."

City of Canton, Ohio v. Harris, 489 U.S. 387, 389 (1989)).  "A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline 'need not allege an unconstitutional policy.'"  Rivera v. Sch. Dist., 2023 U.S. Dist. LEXIS 215316, at *63 (M.D. Pa. Dec. 4, 2023) (quoting Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)).  Rather, a plaintiff must show the school's failure to train, supervise, or discipline its employees "reflects a deliberate or conscious choice."  Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001).  "Proving that an injury could have been avoided if a school official had better or more training is not enough to show municipal liability."  Kline v. Mansfield, 255 Fed. Appx. 624, 627 (3d Cir. 2007).

### Deliberate Indifference

"Deliberate indifference," for failure to train purposes, "can be shown through the existence of a pattern of tortious conduct by inadequately trained employees, or in some circumstances through a single instance where there is a strong likelihood that the situation will recur and that a[] [state actor] lacking specific tools to handle that situation will violate citizens' rights."  I.Z. v. City of Philadelphia, 2017 U.S. Dist. LEXIS 179105, at *7 (E.D. Pa. Oct. 30, 2017) (citing Berg v. City of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)).  It "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Smith v. Snyder Cty. Prison, 2017 U.S. Dist.

LEXIS 111464, *48-49 (M.D. Pa. July 17, 2017) (Schwab, J.) (internal quotations and citation omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick v. Thompson, 563 U.S. 51, 62 (2011). "In order to hold Defendants liable for such indifference to the prospect of a Fourth Amendment violation, Plaintiffs must show that sexual [ ] [harassment] was the 'plainly obvious consequence' of the District's failure." Lockhart v. Willingboro High Sch., 170 F. Supp. 3d 722, 735 (D.N.J. 2015) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 411 (1997)).

*Facts Relevant to Failure to Train Claim*

Decedent was a resident student at the School District and later enrolled at Tech during the 2021-2022 school year as a freshman. See Statement of Material Facts ("SMF") at ¶ 2. Decedent began her career at the School District for Kindergarten. Id. at ¶ 6. Plaintiff testified that Decedent struggled with bullying throughout elementary school but never reported it to the School District. Id. at ¶ 8. Decedent did not struggle with the transition from elementary school to middle school for sixth grade, the 2018-2019 school year. Id. at ¶ 11. Upon her transfer to the middle school, Decedent had an assigned guidance counselor, Shawn Kelly[1]. Id. at ¶ 12.

---

[1] Mr. Kelly has been a School District guidance counselor for eighteen (18) years. See SMF at ¶ 13.

Plaintiff testified that Decedent stopped attending school in person in sixth grade because she was being bullied but Decedent never reported details of the same to Plaintiff.  Id. at ¶ 14.  During that time, she was "changing" in that she started dressing differently.  Id. at ¶ 15.  Plaintiff also testified that Decedent did not have any issues dressing as herself when she went to school in person.  Id. at ¶ 16.  Regardless, she stopped attending in person starting February of 2019.  Id. at ¶ 17.  Decedent's therapist wrote a note dated February 5, 2019, which stated "The above-named patient is currently under my care for a medical condition.  I am recommending that [s]he receive homebound instruction for the next three months, at which time [s]he will be reevaluated."  Id. at ¶ 18.  This is known as Homebound Instruction, which is when School District teachers meet with students one-on-one outside of school.  Id. at ¶ 19.  Homebound Instruction is for students with a medical issue precluding them from attending school in person.  Id. at ¶ 20.  It is meant to be temporary.  Id. at ¶ 21.  This note did not reference issues with bullying.  Id. at ¶ 22.

During Homebound Instruction, Decedent would meet a teacher at the local library approximately three (3) days a week for approximately two hours.  Id. at ¶ 23.  When Decedent was not working with the teacher, Plaintiff testified that she did not know what Decedent would do during the day because she was at work.  Id. at ¶ 24.  Sometime during Decedent's sixth grade year, she had come out as gay

but did not yet identify as transgender.  <u>Id.</u> at ¶ 25.  Plaintiff testified that Decedent did not come out to her classmates and there is no record of this status in her educational records.  <u>Id.</u> at ¶ 26.  During Homebound Instruction, Decedent only interacted with children in her neighborhood.  <u>Id.</u> at ¶ 27.  Decedent continued to receive Homebound Instruction at the start of seventh grade (the 2019-2020 school year) until schools closed due to the COVID-19 pandemic in March of 2020.  <u>Id.</u> at ¶ 28.  Decedent had no issues with accessing virtual learning via Google Classroom during the remainder of seventh grade.  <u>Id.</u> at ¶ 29.

In September of eighth grade (2020-2021), Plaintiff notified the School District, via Mr. Kelly, that Decedent identifies as transgender and wishes to go by the name Adreya and use she/her pronouns.  <u>Id.</u> at ¶ 30.  Plaintiff testified that Decedent would not do any of her work on the virtual learning platform because the School District would not change her legal name to her preferred name on Google Classroom.  <u>Id.</u> at ¶ 31.  Mr. Kelly notified Decedent's teachers of her preferred name and pronouns and requested they respect the same "to help her feel comfortable engaging with school."  <u>Id.</u> at ¶ 32.

Plaintiff complained to the School District that Decedent did not feel comfortable accessing her Google Classroom because it displayed her "dead name."  <u>Id.</u> at ¶ 33.  Mr. Kelly messaged the School District's IT department and learned that because Google Classroom is based on its Skyward system, which is

the School District's school data system, the same reflects all students' legal names. Id. at ¶ 34. The School District advised Plaintiff that they could not legally change Decedent's name in the system without a court order confirming a legal name change. Id. at ¶ 35. However, it is the School District's practice to refer to its students by their preferred names. Id. at ¶ 36. Plaintiff first testified that Decedent advised her that School District teachers were referring to Decedent by her birth name but then clarified that the same did not occur because she "was not in school at all that year." Id. at ¶ 37. The School District is not aware of any incidents where its staff referred to Decedent by her "dead name," or referred to her as male. Id. at ¶ 38.

Because Decedent did not feel comfortable accessing the virtual learning program with her legal name listed, the School District provided Plaintiff with schoolwork for Decedent to complete at home. Id. at ¶ 39. This accommodation was per an agreement between the School District and Plaintiff. Id. at ¶ 40. The School District excused Decedent's absences from the start of the school year until the plan for packet work was finalized. Id. at ¶ 41. The School District also referred Plaintiff to Mr. Cinti, who is a School District social worker, to see if he could assist Plaintiff with obtaining a name change for Decedent. Id. at ¶ 42.

Plaintiff testified that Decedent did not complete any packet work because she was overwhelmed. Id. at ¶ 43. The packet work included a week's worth of

work.  <u>Id.</u> at ¶ 44.  On or around, December 14, 2020, Mr. Kelly emailed the School District's social worker and attendance officer due to his concerns that Decedent was not completing any work and asked for ideas.  <u>Id.</u> at ¶ 45.  Efforts were made to contact Plaintiff to provide academic support for Decedent but Plaintiff did not respond.  <u>Id.</u> at ¶ 46.  Despite the attempts to accommodate Decedent, she missed an entire year of school.  <u>Id.</u> at ¶ 47.  Plaintiff confirmed that Decedent did not speak to any School District teachers or students in a school setting for the 2020-2021 school year.  <u>Id.</u> at ¶ 48.  The School District had no knowledge of students or teachers misgendering Decedent.  <u>Id.</u> at ¶ 49.  The School District confirmed that students did not communicate with one another in Google Classroom.  <u>Id.</u> at ¶ 51.  Decedent did not attend school at the School District for her nineth grade year (2021-2022), and instead withdrew to transfer to Tech effective September 22, 2021.  <u>Id.</u> at ¶ 51.

The School District is entitled to judgment as a matter of law because the record fails to substantiate the following: (a) a constitutional violation committed by a state actor; (a) a lack of policies, training, and procedures addressing gender non-conforming students and suicide awareness;  (c) a pattern-of-violation or a single-violation of students' rights; and (d) causation between a violative act and harm.

### (a)    There is no constitutional violation committed by a state actor.

In the absence of an underlying constitutional violation, a <u>Monell</u> claim fails as a matter of law.  <u>See</u> <u>Smith</u>, 2017 U.S. Dist. LEXIS 111464 at *50 (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)).  There is nothing in the record to support Plaintiff's claims that a state actor violated Decedent's constitutional rights.  As stated, Decedent had not attended school in person at the School District for approximately two and a half years.  Decedent missed an entire year of school despite the School District's numerous attempts to help her access her education.  During those two and half years, she did not communicate with any students.  There were limited interactions with teachers, and nothing in the record supports that they did not accommodate her preferred name and pronouns.  Tellingly, neither Plaintiff nor Decedent ever reported any issues let alone sex-based harassment.  Even the request for Homebound Instruction made no mention of the alleged harassment.  Thus, there is no evidence to support that a state actor refused to address sex-based student-on-student harassment or otherwise violated a constitutional right.

Because there is no constitutional violation committed by a state actor, the School District is entitled to judgment as a matter of law.  In the event this Court disagrees, the failure to train argument still fails because the School District did train its employees, or alternatively, the record fails to establish a pattern-of-violation or a single-violation theory required for a failure to train claim.

**(b)    The School District provided and implemented sufficient training, procedures, and policies regarding student suicide and gender non-conforming students.**

The School District's Policy 819 is titled "Suicide Awareness, Prevention, and Response," and it was adopted on June 10, 2015.  See SMF at ¶ 52.  Policy 819 accounts for training for students and staff.  Id. at ¶ 53.  It also includes methods of prevention and intervention as well as other helpful tools/resources.  Id. at ¶ 54.  The School District has trained its employees regarding suicide prevention on October 31, 2018, September 20, 2018, June 13, 2019, January 24, 2020, March 13, 2020, May 6, 2022.  Id. at ¶ 55.  The School District's Policy 248 is titled "Unlawful Harassment," and it was adopted on April 12, 1989 and last revised December 3, 2018.  Policy 248 addresses harassment on the basis of sex and the protocols related thereto.  Id. at ¶ 56.  The School District's Policy 249 is titled "Bullying/Cyberbullying."  Id. at ¶ 57.  Policy 249 addresses bullying and references discrimination.  Id. at ¶ 58.  Generally speaking, the School District had policies in place addressing "equal rights [for] all students regardless of their demographics or their sexual orientation."  Id. at ¶ 59.  School District staff were aware of these policies.  Id. at ¶ 60.  The School District also has internal practices regarding transgender students including honoring their preferred names and pronouns.  Id. at ¶ 61.

Based on the same, it is evident that School District employs comprehensive policies, training, and procedures, and therefore, is entitled to summary judgment. Regardless, Plaintiff cannot meet the deliberate indifference standard.

### (c)    The record fails to establish deliberate indifference.

The School District continues to be entitled to judgment as a matter of law because the record fails to establish a pattern of constitutional violations or that the School District was deliberately indifferent toward a foreseeable violation of a constitutional right. First, there is no dispute of material fact that the record fails to establish a history of a pattern of sex or sex-based harassment against students at the School District. Second, the record also fails to identify a single incident showing that "the need to train . . . is 'so obvious' that the failure to do so would predictably lead to recurrent violations of constitutional rights." Smith, 2017 U.S. Dist. LEXIS 111464 at *49 (quoting City of Canton, 489 U.S. at 390). The only facts related to Decedent's transgender status is her request for the Google Classroom to not display her "dead name." Because Google Classroom is connected to the School District's student accounting program, the same reflects all students' legal names. The School District advised Plaintiff of this and referred her to its social worker for help on how to speed up the name change process. Regardless, the School District advised all Decedent's teachers to utilize her preferred name and pronouns. It further accommodated Decedent by excusing her

absences related to her refusal to access Google Classroom and provided her with an alternative way to complete school work.  Without evidence that its employees were violating its students rights, the School District cannot be culpable under a failure to train claim.

As such, the record fails to identify an employee making a decision that resulted in a constitutional injury.  Instead, the record shows that the School District respected Decedent's gender non-conforming status and provided accommodations.  Notwithstanding, there is no causation between deficient training and the alleged harm.

### (d)    Plaintiff fails to establish causation between an employee's wrong choice and the deprivation of a constitutional right.

"In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of training . . . must also allege causation." Rivera, at *65 (citing Elliott v. Pa. Interscholastic Ath. Assoc., 595 F. Supp. 3d 312 (M.D. Pa. 2022)).  "The causation inquiry focuses on whether the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect." Thomas v. Cumberland County, 749 F.3d 217, 226 (3d Cir. 2014).  "The alleged deficiency in a training program must be closely related to the alleged constitutional injury because '[i]n virtually every instance where a person has had his or her constitutional rights violated by a [municipality], said plaintiff will be able to point to something the [municipality]

"could have done" to prevent the unfortunate incident.'" <u>Forrest v. Parry</u>, 930 F.3d 93, 109 (3d Cir. 2019) (quoting <u>Harris</u>, 489 U.S. at 392)).

Plaintiff's causation argument appears to be that but for the alleged failure to train School District employees, Decedent would not have committed suicide. This argument on its face fails because there is no constitutional violation committed by a state actor. Importantly, Decedent was not the School District's student at the time of her suicide. Moreover, the School District had not educated Decedent for the entire school year prior and she had not received education in person for a year and half prior to that.

In <u>Sanford v. Stiles</u>, the Eastern District contemplated a student suicide as it related to a state created danger theory, but jurisprudence cited therein is relevant here:

> [S]uicide by school-age children is no slight matter; but it has no single cause and no infallible salutation . . . Absent a showing that the school affirmatively caused a suicide, the primary responsibility for safeguarding children from danger, as from most others, is that of their parents; even they, with direct control and intimate knowledge are often helpless.

<u>Sanford v. Stiles</u>, 2004 U.S. Dist. LEXIS 22948, at *30 (E.D. Pa. Nov. 10, 2004) (affirmed by 456 F.3d 298 (3d Cir. 2006)) (quoting Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)). The Third Circuit also makes it clear that there is no special relationship between a student and school entities as to imply an affirmative

constitutional duty to protect from all potential harm.  See D.R., 972 at F.2d 1372.

Above all, parents maintain the power to protect their children.  Id. at 1371.

The plaintiff in Sanford relied on that district's Suicide Referral Process and

argued the intervention related to the same was insufficient.  Sanford v. Stiles, 456

F.3d 298, 314 (3d Cir. 2006).    When the Third Circuit affirmed, it found that the

plaintiff failed to show that any school action could be causally related to the

child's suicide.  Id.  Moreover, the lower court in Sanford found "no evidence of a

pattern of student suicides in the district," or evidence that the student suicide

procedures failed in the past.  Id.  Despite the different theory employed here, the

argument is applicable.

Importantly, in Sanford, a student reported that the decedent made a suicidal

comment and the guidance counselor did a threat assessment.  Id.  at 301-302.

After a subsequent guidance visit, the decedent committed suicide at home that

evening.  Id.  Here the record shows a history of inconsistently treated mental

illnesses that was unknown to the Tech Defendants and the School District.  The

records shows Decedent displayed issues with behavior as early as four years old.

See SMF at ¶ 170.  She was diagnosed with bipolar disorder at ten (10) years old

and, at some point, depression and anxiety.  Id. at ¶¶ 175-76.  There are earlier

reports of suicidal ideations that Plaintiff never reported to the Tech Defendants or

the School District.  Id. at ¶¶ 178, 181, 179, 194.

The record also shows various traumatic events including the death of Decedent's grandfather and father (who was alleged to be murdered by his own father) as well as a sexual assault around nine (9) years old. Id. at ¶¶ 197-201. Plaintiff unilaterally weened Decedent off her bipolar and/or depression medication at least twice. Id. at ¶¶ 189, 203. Plaintiff consistently reported to healthcare providers that Decedent's behavioral issues/mood swings increased when she did not take her medication. Id. at ¶ 183, 206. This mental health history was neither reported to the School District nor Tech. Id. at ¶ 179.

At the time of her death, Decedent was not consistently taking her medication, if at all. Id. at ¶ 207. The days leading up to Decedent's death, she did not tell Plaintiff there were any issues. Id. at ¶ 208. Decedent did tell Plaintiff she made a friend and that she was happy. Id. at ¶ 209. The weekend prior to her death, Decedent had a respiratory infection and she did not go to school the following Monday. Id. at ¶ 210. The last time Plaintiff spoke to Decedent was the night before she died. Id. at ¶ 211. The next day, Decedent was found unresponsive in her bed by Plaintiff's boyfriend at the time. Id. at ¶ 212. She died of an overdose of her own medication. Id. at ¶ 214.

The record identifies a variety of factors that could have contributed to Decedent's death, but none of them can be attributed to the School District. Because the record fails to support (a) a constitutional violation committed by a

state actor, (b) a lack of policies, training, and procedures addressing gender non-conforming students and suicide awareness, (c) a pattern-of-violation or a single-violation of students' rights, and (d) causation between a violative act and harm, Plaintiff's claims are legally insufficient. Therefore, the School District is entitled to summary judgment as to Count VI.

II.    The record fails to support a violation of the Equal Protection Clause.

The School District is entitled to judgment as a matter of law with respect to Count VIII because the record does not establish that the School District treated Decedent differently than similarly situated individuals. Instead, the record shows that the School District treated Decedent fairly and equally by honoring her requests and affording her the same opportunities as her peers.

To sufficiently plead a Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that he or she "received different treatment from other similarly situated individuals or groups." James S. ex rel. Thelma S. v. Sch. Dist. of Phila, 559 F. Supp. 2d 600, 623 (E.D. Pa. 2008). "To state an equal-protection claim, Plaintiffs must allege (and ultimately prove) 'intentional discrimination.'" Hassan v. City of New York, 804 F.3d 277, 294 (3d Cir. 2015) (quoting Washington v. Davis, 426 U.S. 229, 241 (1976)). "[M]ere unequal treatment or adverse effect" is not sufficient. Jewish Home of E. PA v. Centers for Medicare & Medicaid Servs., 693 F.3d 359 (3d Cir.

2012).  Rather, the plaintiff "must show that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects.'"  Id. (quoting Wayte v. United States, 470 U.S. 598, 610 (1985)).

Plaintiff's Equal Protection Claim alleges that because Decedent was a transgender female and she did not conform to male sex-stereotypes, she was treated differently from similarly situated students.  See ECF # 1 at ¶ 228.  In the event this claim is brought under the "class of one" theory, a plaintiff must show that (1) the public entity treated the plaintiff differently than others similarly situated; (2) the entity did so intentionally; and (3) there was no rational basis for the difference.  See Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). Under the traditional theory, a plaintiff must demonstrate "(1) he or she is a member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently."  Smith, 2017 U.S. Dist. LEXIS 111464 at *50.

Plaintiff's equal protection claim fails under both the class-of-one and traditional theories because the record fails to show that Decedent was treated differently than similarly situated individuals.  Alternatively, there is no evidence to support intentional discrimination.  Thus, the School District is entitled to judgment as a matter of law for Count VIII.

**(a)    Under the class-of-one theory, the record fails to establish that the School District treated similarly situated students differently from Decedent.**

Decedent was afforded the same opportunities and accommodations as all School District students.  The School District noted and honored her preferred name.  Neither Decedent nor Plaintiff notified the School District that students or staff were not honoring her preferred name or otherwise harassing her on the basis of sex.  As mentioned, the only facts related to Decedent's transgender status, is her request for the Google Classroom to not display her "dead name."  Because Google Classroom is connected to the School District's student accounting program, the same reflects all students' legal names.  Therefore, any student who requests their Google Classroom name be changed would have to provide a court order.  The School District advised Plaintiff of this and referred her to its social worker for help on how to speed up the name change process.  Regardless, the School District advised all Decedent's teachers to utilize her preferred name and pronouns.  It further accommodated Decedent by excusing her absences related to her refusal to access Google Classroom and provided her with an alternative way to complete school work.  Despite the same, Decedent did not complete any work during her eighth grade year.  The School District's communications to Plaintiff expressing its concerns went unanswered.  Without a specific situation showing

Decedent was treated differently than similarly situated students, all theories under the Equal Protection Clause fail.

**(b)    A traditional theory also fails.**

In the event Count VIII is brought under a traditional, or protected class, theory, there is a question as to whether Decedent's transgender status amounts to a protected class under the Equal Protection Clause.  <u>See</u> <u>Smith</u>, 2017 U.S. Dist. LEXIS 111464 at *47.  But because the record fails to show that Decedent was treated differently from other similarly situated individuals, this claim would fail regardless of the theory.  Therefore, Plaintiff fails to substantiate an equal protection claim and the School District is entitled to summary judgment for Count VIII.

## CONCLUSION

Based on the foregoing, the School District is entitled to judgment as a matter of law.  Its Motion for Summary Judgment should be granted in its entirety and Plaintiff's case dismissed.

Respectfully submitted,

KING, SPRY, HERMAN, FREUND & FAUL, LLC

Dated: <u>December 16, 2024</u>          By: <u>*/s/ Alyssa M. Hicks*</u>
                                         John E. Freund, III, Esq.
                                         Attorney I.D. No. 25390
                                         Alyssa M. Hicks, Esq.
                                         Attorney I.D. No, 325722
                                         One West Broad Street, Suite 700
                                         Bethlehem, Pennsylvania 18010
                                         (610) 332-0390
                                         *Attorneys for West Side Career and Technology Center, Wyoming Valley West School District, and Richard Rava*

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned counsel hereby certifies that according to Microsoft Word's word count feature, this Brief contains approximately 5,300 words.

                                         Respectfully submitted,

                                         <u>*/s/Alyssa M. Hicks*</u>
                                         Alyssa M. Hicks, Esq.
                                         Attorney ID # 325722

Date: <u>December 16, 2024</u>

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney for Defendants hereby certifies that a true and correct copy of the foregoing document has been electronically filed and is available for viewing and downloading from the ECF system in accordance with the local Federal Rules of Civil Procedure and has been served electronically upon the following counsel of record on this day addressed as follows:

Nathaniel L. Foote
nate@vca.law
Ryan Dickinson
ryan@vca.law
Andreozzi & Foote
4503 North Front Street
Harrisburg, PA 17110

DATE: <u>December 16, 2024</u>                By: <u>*/s/ Alyssa M. Hicks*</u>
                                                              Alyssa M. Hicks, Esquire

{01392566}